(No. 53334.—

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant, v. CHICAGO TEACHERS UNION, LOCAL NO. 1, *et al.*, Appellees.

*Opinion filed September 30, 1981.—Rehearing denied November 25, 1981.*

Michael J. Murray, of Chicago (Richard E. Girard and John E. Wren, of counsel), for appellant.

Lawrence A. Poltrock, of Chicago (DeJong, Poltrock & Giampietro, of counsel), for appellees.

MR. JUSTICE SIMON delivered the opinion of the court:

On April 16, 1974, a Chicago public elementary school teacher was viciously beaten by an unknown assailant. The assault occurred during school hours in the hall outside the teacher's classroom while she was bringing her students back from the lunchroom. She was hospitalized and unable to return to her teaching duties until September 1, 1976.

At the time of the assault article 44—8 of the collective bargaining agreement in effect between the Chicago board of education and the Chicago Teachers Union provided:

"Teachers or other bargaining unit members whose absences result from school-related assault shall be paid full salary and medical expenses by the Board and no deduction shall be made from sick leave."

Pursuant to this article the union filed a grievance on the teacher's behalf several weeks after the assault. After some negotiation the board agreed to pay her full salary for the remainder of the 1973-74 school year. But when school

reconvened in September 1974 for the 1974-75 school year, the teacher did not receive her regular pay checks. The union filed a second grievance on October 29, 1974, which eventually became the subject of this appeal. The union and the teacher requested that she be paid her full salary; the board refused and the grievance proceeded through the regular grievance channels.

Meanwhile, on April 7, 1975, the teacher filed a claim under the workers' compensation statute. After a hearing and an appeal to the Industrial Commission, she was awarded $17,361.22 for disability and medical expenses. The award was confirmed by the circuit court of Cook County, and the board agreed, on August 25, 1976, to pay the Industrial Commission's award.

The union had demanded that the grievance go to arbitration, as was its right under the collective bargaining agreement, but the board refused to participate in the selection of an arbitrator under the procedures established by the agreement. The union then selected an arbitrator under the procedure provided for by the agreement, without the board participating. On February 8, 1977, the union and the teacher, the defendants herein, appeared before the arbitrator and presented evidence. The board, although notified of the hearing, was not represented, but it later filed a brief with the arbitrator. On August 30, 1977, the arbitrator found for the teacher and awarded her $34,936.10, an amount equal to her unpaid salary for the school years 1974-75 and 1975-76.

On November 23, 1977, the board filed a complaint in the circuit court of Cook County to vacate the arbitrator's award, as authorized by the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 112). On the defendants' motion, the court struck and dismissed the board's complaint and confirmed the arbitrator's award in full. The appellate court confirmed the decision (82 Ill. App. 3d 354), and this court granted leave to appeal (73 Ill. 2d R. 315).

The circuit court's role when asked to vacate or confirm an arbitrator's award is limited. When the award is made pursuant to a collective bargaining agreement, the court is directed to look to the common law grounds for vacating an arbitration award that were in effect before the enactment of the Uniform Arbitration Act. (Ill. Rev. Stat. 1977, ch. 10, par. 112(e).) Those grounds were set out in an exhaustive analysis of the common law in *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 601-10. They are fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration. In the present case there is no suggestion that the arbitrator committed fraud, was corrupt or partial or engaged in any form of misconduct. The only grounds on which the arbitrator's award could have been vacated by the circuit court, then, were mistake or a failure to submit the issue to the arbitrator.

The latter ground is similar to jurisdiction. The arbitrator's power is taken only from the agreement, and the scope of that power must be defined by the agreement. The collective bargaining agreement here defines a complaint that the agreement has been violated as a grievance and refers grievances such as the present one through channels that can, upon the union's request, result in a final, binding decision by an arbitrator. On its face, then, the issue appears to have properly been sent to arbitration.

The board, however, points to article 1—18 of the agreement, which provides:

"The terms of this Agreement shall not apply where inconsistent with constitutional, statutory or other legal provisions.***

*** No decision on or adjustment of a grievance shall be contrary to any provision of this Agreement."

The board argues that recovery by the teacher under article 44—8 would be inconsistent with sections 5 and 11 of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.5, 138.11). Article 1—18 would thus preclude an

arbitrator from taking any grievance if the decision could be inconsistent with law. According to the board, any decision inconsistent with law is in violation of article 1—18, strips the arbitrator of jurisdiction, and can be challenged in the circuit court.

The board's position is unpersuasive. Private agreements in addition to workers' compensation schemes are common, and the cardinal principle in the enforceability of such agreements is that the contractual excess is not workers' compensation.

> "It performs the same functions, and is payable under the same general conditions, but legally it is nothing more than the fruit of a private agreement to pay a sum of money on specified conditions. The provisions of a compensation act may be incorporated into the agreement by reference, but the operative force and the ultimate legal character of the arrangement remain that of private contract." 4 A. Larson, Workmen's Compensation § 97.53 (1981).

Article 44—8 did not mention the workers' compensation statute, and appears to be simply an agreement for supplemental benefits for school employees subject to special dangers. While the Workmen's Compensation Act bars collection of "common law or statutory right[s] to recover" other than under the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.5), the exclusive-remedy provision does not bar insurance-type benefits which are employer funded (Ill. Rev. Stat. 1977, ch. 48, par. 138.4(e)). Article 44—8 provides such a fringe benefit, analogous to sick leave, measured by the full salary the assaulted teacher would have earned, plus medical costs. The arbitrator's decision that article 44—8 was consistent with existing law was reasonable.

The board protests that the teacher is enjoying a double recovery and that the parties who negotiated article 44—8 never intended that result. It presents transcripts to support this argument, but the transcripts are not conclusive, showing no agreement as to the meaning of article 44—8 other

than in the plain language of the article itself. In addition, the transcripts are parol evidence, inadmissible to construe an unambiguous provision, and were never presented in the hearing before the arbitrator.

Besides, the Workmen's Compensation Act provides in section 8(j) (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(j)) for credits in cases of double recovery through compensation awards and private benefit plans. But the board did not assert its right to these credits, either before the Industrial Commission or the arbitrator. By not claiming these credits and showing it was entitled to them, the board waived whatever rights it had to them. *Hill Freight Lines, Inc., v. Industrial Com.* (1967), 36 Ill. 2d 419, 424.

The problem of security in urban schools is a familiar and serious one. It is obvious that there can be no education where there is no security for students, teachers or staff. Article 44—8, by providing double recovery, is a positive step in this area that recognizes reality and provides extraordinary measures for teachers victimized by schoolrelated violence. From the teacher's point of view, double recovery protects teachers financially if they are assaulted and deters violence by encouraging the board to provide adequate security in order to conserve its own purse strings. From the board's point of view double recovery is an inducement to teachers to put aside their fears and teach in schools which have gained a reputation for violence. In the light of these considerations, we cannot hold that the arbitrator's interpretation of the collective bargaining agreement was so misguided that it must be vacated.

Although we believe that the arbitrator was correct in deciding that the Workmen's Compensation Act and the collective bargaining agreement fit together consistently, his jurisdiction did not depend upon his correct interpretation of the law. Regardless of his interpretation of the Workmen's Compensation Act, the arbitrator here was entrusted with the determination of how article 44—8 was to be

applied to the teacher.

The court said in *White Star* that the parties had chosen the arbitrators to settle the questions of law which affected the contractual interpretation.

> "The case was to be decided according to law, but the arbitrators, in the absence of an expressed intention to the contrary, were to be their own judges as to what the law was, otherwise the parties would have provided that the case would be subject to review by the courts or that the legal questions should be referred to some other tribunal for final determination." (220 Ill. 578, 606.)

Even when the agreement explicitly required the decision of the arbitrator to be according to the law (not the case here), the language was not be construed as a limitation on the power of the arbitrator.

The only other ground for vacating the award was mistake. No mistake of fact was present; moreover, the arbitrator's award could not be vacated by the circuit court if the arbitrator made a mistake of law by erring in his interpretation of the interplay between article 44—8 and the exclusiverecovery provision of the workers' compensation statute. A court must construe an award, whenever possible, to uphold its validity. Errors of judgment in law are not grounds for vacating an arbitrator's award when the interpretation of law is entrusted to the arbitrator. (*Garver v. Ferguson* (1979), 76 Ill. 2d 1, 10-11.) Only where it appears on the face of the award (and not in the arbitrator's opinion) that the arbitrator was so mistaken as to the law that, if apprised of the mistake, the award would be different may a court review the legal reasoning used to reach the decision. (*White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 609.) An example would be if the arbitrator in this case considered an old version of the workers' compensation statutes that had since been amended, unbeknownst to the arbitrator.

The reasonable interpretation of article 1—18 of the

agreement is that the parties entrusted the interpretation of the law, as well as of the facts and the agreement, to the arbitrator. From the face of the award it does not appear that he made a mistake in choosing which laws to consider. Because the arbitrator's decision was bargained for, the courts would have no business overruling the arbitrator's interpretation even if they disagreed. *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 599, 4 L. Ed. 2d 1424, 1429, 80 S. Ct. 1358, 1362, cited in *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 421.

The board, however, claims that the award must be vacated because article 44—8 of the agreement is unenforceable in view of the provision in the School Code that the board alone can fix salaries. Thus, the board contends, article 44—8 is an illegal delegation of the board's powers. It is true that a board cannot delegate the fixing of salaries. (See Ill. Rev. Stat. 1977, ch. 122, pars. 34—16, 34—18; *Lindblad v. Board of Education* (1906), 221 Ill. 261, 271.) But that did not happen here. The board set the salaries of its teachers, including the teacher involved in this case. The salaries were published in the appendix to the collective bargaining agreement. The arbitrator merely determined that the teacher was eligible for the benefits of article 44—8, as measured by her salary. How much was not at issue, only whether the benefit was to be paid.

The board insists that there was an improper delegation of power because the arbitrator had to determine the teacher's ability in her work to structure her award at the advanced salary level she was scheduled to achieve for the 1975-76 school year. The higher level would only have been paid, the board notes, if the teacher continued in the board's employ, satisfying its competency requirements. But teaching ability, other than minimal competency (which the board does not dispute), was not at issue. The salary increase was determined in keeping with the teacher's years

of service. She was awarded the full salary which she would have received had she not been assaulted and injured, and that is the amount to which she was entitled. Speculation that she might have been dismissed or demoted had she been able to continue teaching has no place in the proper determination of an award under article 44—8. The arbitrator did not assume any nondelegable powers.

The circuit court properly refused to vacate the award. Its judgment confirming the award, and that of the appellate court, are affirmed.

*Judgments affirmed.*

MR. JUSTICE UNDERWOOD, specially concurring:

I am not at all sure that I agree with everything said in the opinion of the court, particularly with reference to the double recovery by the teacher. However, because the board failed to raise that issue before the Commission or before the arbitrator, I agree that it is precluded from doing so here. Consequently, I concur in the judgment.