(No. 65683.—

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Appellee, v. THE STATE OF ILLINOIS, Department of Mental Health, *et al.*, Appellants.

*Opinion filed September 22, 1988.*

Neil F. Hartigan, Attorney General, of Springfield (Delilah Brummet, of the Illinois Department of Mental Health and Developmental Disabilities, and Gary L. Starkman, Fred R. Kimmel and Thomas F. Sax, Special Assistant Attorneys General, of Arvey, Hodes, Costello & Burman, all of Chicago, of counsel), for appellants.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellee.

Gregory J. Malovance and William G. Miossi, of Winston & Strawn, of Chicago, for amicus curiae Illinois Education Association-NEA.

JUSTICE RYAN delivered the opinion of the court:

Plaintiff, the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME), brought this action in the circuit court of Cook County to enforce the arbitration award pursuant to the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1608, 1616) and section 11 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 111). The

defendants, the State of Illinois Department of Mental Health and Developmental Disabilities, and Michael A. Belletire, its director, and the Department of Central Management Services and its director, Michael E. Tristano, sought to vacate the award based on public policy considerations and because the arbitrator allegedly exceeded his authority in reducing the discipline imposed on two employees by the Department of Mental Health from discharge to suspension and reinstatement. After both parties moved for summary judgment, the circuit court granted judgment for the Department of Mental Health and vacated the arbitration award, finding that it was inconsistent with the public policy of Illinois. The appellate court reversed. (158 Ill. App. 3d 584.) We granted the defendants' petition for leave to appeal. (107 Ill. 2d R. 315.) The Illinois Education Association-NEA was granted leave to file an *amicus curiae* brief. (107 Ill. 2d R. 345.) We affirm the appellate court.

The facts of this case, as determined by the arbitrator, are not in dispute. The grievants in the arbitration proceeding were two discharged mental health technicians, employed by the Department of Mental Health at the Howe Developmental Center to provide care and supervision for the residents. The Howe Developmental Center is a State mental health facility that provides care and treatment for the profoundly mentally retarded. The residents at Howe have chronological ages ranging from 25 to 65; however, the average I.Q. of the residents is 10. Accordingly, each resident requires assistance in performing basic daily living functions.

On April 28, 1985, the Howe Developmental Center was short-staffed. Despite this fact, the grievants were authorized to go to the Jewel Food Store to buy food for an impromptu barbecue to be held for the residents that afternoon. The grievants spent approximately 30 minutes shopping at the Jewel Food Store for the barbecue.

Instead of returning directly to the Center, however, the grievants made an unauthorized trip to a flea market for another hour and fifteen minutes. During their absence, a male resident in the south wing (grievants had been assigned to the female wing) died. The resident had been tied to a toilet seat with the back of a wheelchair placed in front of him. He fell forward from his tied position on the toilet, and his neck came to rest on the back of the wheelchair. This was found to be the cause of death. Although another mental health technician was aware that the resident had been tied to the toilet, his death occurred while he was left unattended. Pursuant to the rules and regulations of the Department of Mental Health and the policy of the Howe Developmental Center, the grievants were discharged for conduct constituting mistreatment of a service recipient.

The union, AFSCME, pursuant to the parties' collective-bargaining agreement, filed a grievance challenging the discharge of the two grievants. When the parties were unable to settle the grievance, the union submitted the matter to arbitration. The parties stipulated the issue before the arbitrator: "Were the grievants discharged for just cause? If not, what is the remedy?"

The arbitrator's finding upheld the grievance but he reduced the grievants' discipline from discharges to four-month suspensions and ordered reinstatement, without back pay or any other benefits. The arbitrator found that the grievants were guilty of mistreatment of a service recipient because they left their worksite while in pay status and while the facility was "short-staffed" and that they failed to notify their supervisor or receive permission to visit the flea market. However, the arbitrator specifically found that there was no direct link between the grievants' unauthorized absence and the resident's death. Although the arbitrator found that the grievants' conduct constituted mistreatment of a service recipient,

he held the conduct did not constitute "just cause" for discharge because of mitigating factors. The arbitrator based his finding that there was no "just cause" for discharge on his consideration of five criteria: (1) agreement by the parties that both grievants had been exemplary employees; (2) the grievants had treated residents of the facility as though they were "family"; (3) the admission of wrongdoing by the grievants and their expression of remorse; (4) the grievants' straightforward and truthful testimony at the arbitration hearing; (5) the arbitrator's "conviction that these grievants are able to return to the useful employ of the Employer and provide appropriate services to the residents without the likelihood of a repetition of the occurrences of April 28, 1985."

AFSCME, the union, brought an action in the circuit court to confirm the award under the Illinois Uniform Arbitration Act. The Department of Mental Health responded by seeking to set aside the award. On cross-motions for summary judgment, the circuit court held for the Department of Mental Health. The trial court found the analysis and conclusions of the arbitrator absurd and beyond comprehension. Further, the trial court found no authority in the collective-bargaining agreement for the arbitrator to consider mitigating circumstances in reducing the penalty from discharge to suspension. The arbitration award, according to the trial court, had to be vacated because it represented a severe and extreme departure from the public policy of Illinois, which is to protect not to endanger mental patients. The appellate court reversed, finding that the arbitrator did not exceed his authority in considering mitigating factors because the collective-bargaining agreement did not define "just cause." Having determined that the arbitrator did not exceed his authority, the appellate court concluded that the award did not violate public policy because the griev-

ants were suspended for four months without back pay or benefits. 158 Ill. App. 3d at 593.

## I

The Department of Mental Health asserts that Illinois public policy prohibits the reinstatement of a mental health technician found to have mistreated the profoundly retarded. Because the grievants were employed by public entities entrusted with the responsibility of caring for the profoundly retarded, the Department contends that this case takes on broader policy considerations. The Department relies on *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 423-24, in contending that the arbitration award to reinstate the employees contravenes public policy considerations of paramount importance and must therefore be set aside. Alternatively, the Department submits that the arbitrator exceeded his authority under the terms of the collective-bargaining agreement. We will deal first with the alternative argument.

The Department challenges the authority of the arbitrator to reduce a discharge to a suspension on two grounds. First, it contends that the arbitrator usurped the management function of defining "levels of service or quality." in reducing the discharge to suspension. Second, the Department asserts that the arbitrator exceeded his authority when he considered mitigating factors, after he concluded that the grievants were guilty of mistreatment of a service recipient. We do not agree.

The arbitrator in this case had authority to determine whether there was "just cause" for the discharge because the Department waived its right to challenge his authority by submitting the grievance on its merits to the arbitrator. (See *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, ___, 98 L.

Ed. 2d 286, 301, 108 S. Ct. 364, 372-73; M. Grossman, The Question of Arbitrability 48 (1984).) However, even if this issue were not waived by submitting it to the arbitrator, we believe the arbitrator did not exceed his authority under the collective-bargaining agreement.

At the outset, it should be noted that a court's review of an arbitrator's award is extremely limited. (*Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469; *E. I. DuPont de Nemours v. Grasselli Employees Independent Association of East Chicago, Inc.* (7th Cir. 1986), 790 F.2d 611, 614.) Moreover, a court must construe an award, if possible, as valid. (*Board of Education,* 86 Ill. 2d at 477; *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 10-11.) The authority of the arbitration award in the case at bar is grounded upon the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*). The scope of an arbitrator's power generally depends upon what the parties agree to submit to arbitration. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 419.) Section 8 of the Act provides that all grievance disputes must be resolved by final and binding arbitration, unless there is a joint agreement of the employer and union to the contrary. (Ill. Rev. Stat. 1985, ch. 48, par. 1608.) A labor arbitration award must be enforced if the arbitrator acts within the scope of his authority and his award draws its essence from the parties' collective-bargaining agreement. (74 Ill. 2d at 421.) In *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1353, the Supreme Court stated:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility

in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (363 U.S. at 597, 4 L. Ed. 2d at 1428, 80 S. Ct. at 1361.)

(See also *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 477-78.) In *United States Postal Service v. National Association of Letter Carriers* (D.C. Cir. 1987), 810 F.2d 1239, 1241, the court stated that a labor arbitration award must be enforced if the arbitrator acts within the confines of his jurisdiction, and his award draws its essence from the parties' collective-bargaining agreement, even when a reviewing court disagrees with the arbitrator's judgment on the merits. Further, in *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, ___, 98 L. Ed. 2d 286, 299, 108 S. Ct. 364, 370, the Court stated it must order resort to private settlement mechanism without dealing with the merits of the dispute "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept."

Upon review of the parties' collective-bargaining agreement, there can be no serious doubt regarding the arbitrator's authority to reduce the grievants' punishment of discharge to suspension. Article IX, section 1, of the collective-bargaining agreement provides that disciplinary action may only be imposed upon an employee

for "just cause." Disciplinary action includes oral or written reprimand, suspension, or discharge. Significantly, "just cause" was not defined in the collective-bargaining agreement. When a collective-bargaining agreement does not define what "just cause" is, it is left up to the arbitrator to determine if the grievants were discharged for "just cause." *E. I. DuPont de Nemours v. Grasselli Employees Independent Association of East Chicago, Inc.* (7th Cir. 1986), 790 F.2d 611, 619 (Easterbrook, J., concurring); F. Elkouri & E. Elkouri, How Arbitration Works 653 n.11 (4th ed. 1985).

The Department asserts that the arbitrator, by reducing the discharges to suspensions without back pay, substituted his own judgment for the Department's managerial discretion as to the discipline required to maintain acceptable standards of recipient care. The Department relies upon article II, section 1, the management rights article of the collective-bargaining agreement between the parties, in support of the notion that the Department retained the right to determine the appropriate punishment upon a finding of just cause. The management rights article provides in part:

> "[T]he Employer retains the exclusive right to manage its operations, determine its policies, budget and operations, the manner of exercise of its statutory functions and the directions of its working forces, including, but not limited to: The right to hire, promote, demote, transfer, evaluate, allocate and assign employees; *to discipline, suspend and discharge for just cause.*" (Emphasis added.)

While it is not the function of an arbitrator to usurp management's right to define quality of service, "the fairness of penalties imposed for faulty work may be closely scrutinized by arbitrators." (F. Elkouri & E. Elkouri, How Arbitration Works 494 (4th ed. 1985).) Thus, in a discipline case, the arbitrator is not exercising control over the standards of quality of service; rather,

he is simply determining whether the "punishment fits the crime."

The Department also submits that the arbitrator exceeded his authority by considering mitigating factors in reducing the discharge to suspension. The Department contends that once the arbitrator found that the grievants were guilty of "mistreatment of a service recipients" in violation of the Department of Mental Health Rule 104.20(c)(4) (59 Ill. Adm. Code §104.20(c)(4) (1985)), he had no authority to consider mitigating factors. Under Rule 104.20(a), any employee found guilty of mistreatment of a service recipient "will be subject to discharge."(59 Ill. Adm. Code §104.20(a) (1985).) The appellate court, in the case at bar, held that "the operative words of 'will be *subject to* discharge' " did not require mandatory discharge. (Emphasis in original.) (158 Ill. App. 3d at 590.) The Department contends that the appellate court's analysis is wrong because in *S. D. Warren Co. v. United Paperworkers International Union, AFL-CIO, Local 1069* (1st Cir. 1987), 815 F.2d 178, 184-85, the court concluded that language which indicated that the employer "may discharge" for the violation of a rule placed discretion in the *employer* whether to discharge, not the arbitrator. The Department's reliance on *S. D. Warren* is questionable, because *S. D. Warren* was vacated by the Supreme Court for further consideration in light of *Misco. (S. D. Warren Co. v. United Paperworkers International Union, AFL-CIO, Local 1069* (1st Cir. 1987), 815 F.2d 178, *vacated* (1987), 484 U.S. 983, 98 L. Ed. 2d 496, 108 S. Ct. 497.) Moreover, regardless of the decision in *S. D. Warren* on remand, we find it distinguishable. (*S. D. Warren Co. v. United Paperworkers International Union, AFL-CIO, Local 1069* (1st Cir. 1988), 845 F.2d 3.) In *S.D. Warren*, the grievants violated a mill rule which had been incorporated into the parties' collective-bargaining agreement, and therefore

the court held that the arbitrator's award reducing discharges to suspensions did not draw its essence from the collective-bargaining agreement. (815 F.2d at 183.) In the case at bar, however, Rule 104.20(c)(4) is a unilateral rule adopted by the employer that was not incorporated into the collective-bargaining agreement. Additionally, section 15(b) of the Illinois Public Labor Relations Act provides in part:

> "[A]ny collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary statutes, charters, ordinances, rules or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents." (Ill. Rev. Stat. 1985, ch. 48, par. 1615(b).)

While we note that the collective-bargaining agreement could have provided that any employee found guilty of any mistreatment of a service recipient mandated discharge, it did not.

We agree with the appellate court that whether the grievants should be discharged for just cause was a question for the arbitrator. Finally, the Supreme Court recently stated:

> "Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct. In Enterprise Wheel, for example, the arbitrator reduced the discipline from discharge to a 10-day suspension. The Court of Appeals refused to enforce the award, but we reversed, explaining that though the arbitrator's decision must draw its essence from the agreement, he 'is to bring his informed judgement to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.*' " (Emphasis in original.) (*United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, ___, 98 L. Ed. 2d 286, 301, 108 S. Ct. 364, 372, quoting *Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. at 597, 4 L. Ed. 2d at 1428, 80 S. Ct. at 1361.)

We noted above that article IX, section 1, of the collective-bargaining agreement between the parties provides four types of disciplinary measures that can be imposed upon a finding of just cause. The arbitrator's award drew its essence from the parties' agreement when he found there was no "just cause" for discharge and reduced the discipline to suspension because the grievants were exemplary employees in the past and the arbitrator believed that the grievants would perform excellent services in the future. This conclusion is further supported by section 1, which provides that "[t]he Employer agrees with the tenets of progressive and corrective discipline." We will discuss the implications of this provision of the collective-bargaining agreement later in this opinion.

## II

The Department further seeks to vacate the arbitration award because it violates public policy. The Department relies upon the public policy favoring the protection and care for persons with developmental disabilities embodied in judicial decisions (*In re Stephenson* (1977), 67 Ill. 2d 544, 554; *Montague v. George J. London Memorial Hospital* (1979), 78 Ill. App. 3d 298, 301-02), in the right of recipients under the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, par. 2—102), in the Federal Developmentally Disabled Assistance and Bill of Rights Act (42 U.S.C. §6000 (1982)), and in the Illinois statute that imposes a felony penalty when direct injury results from the reckless or negligent failure to provide adequate medical or personal care or maintenance of the developmentally disabled (Ill. Rev. Stat. 1985, ch. 38, par. 12—19). Additionally, the Department contends that the award violates public policy because the arbitrator specifically found that the

grievants were guilty of mistreatment of a service recipient.

An arbitration award in contravention of paramount considerations of public policy is not enforceable. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 423-24.) While there is no precise definition of public policy, it is to be found in the Constitution, in statutes and, when these are silent, in judicial decisions. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130; *Zeigler v. Illinois Trust & Savings Bank* (1910), 245 Ill. 180, 193.) " 'The public policy of a State or nation must be determined by its constitution, laws and judicial decisions,—not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public.' " 245 Ill. at 193, quoting *Hartford Fire Insurance Co. v. Chicago, Milwaukee & St. Paul Ry. Co.* (1895), 70 F. 201, 202.

The Department notes that Federal courts have repeatedly set aside awards when the grievant's reinstatement would offend public policy. (See, *e.g.*, *United States Postal Service v. American Postal Workers Union* (1st Cir. 1984), 736 F.2d 822 (vacated award reinstating employee convicted of embezzling postal funds); *Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO, Local Union 540 v. Great Western Food Co.* (5th Cir. 1983), 712 F.2d 122 (vacated award reinstating grievant drinking before driving); but see *United States Postal Service v. National Association of Letter Carriers* (D.C. Cir. 1987), 810 F.2d 1239 (reinstating grievant who pleaded guilty to unlawful delay of mail did not violate public policy).) Both parties cite *W. R. Grace & Co. v. Local Union 759* (1983), 461 U.S. 757, 76 L. Ed. 2d 298, 103 S. Ct. 2177, as stating the proper standard for determining if public policy has been violated.

While we are not bound to follow Federal decisions because Illinois has a different arbitration act, we can look to them for guidance.

In *W. R. Grace*, the Supreme Court explained that in order to vacate an arbitration award, the contract as *interpreted* by the arbitrator must violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" (461 U.S. at 766, 76 L. Ed. 2d at 307, 103 S. Ct. at 2183, quoting *Muschany v. United States* (1945), 324 U.S. 49, 66, 89 L. Ed. 744, 756, 65 S. Ct. 442, 451.) Moreover, the Supreme Court recently reaffirmed that the public policy exception in such cases is extremely narrow. In order to vacate the award of an arbitrator, the violation of public policy must be clearly shown. *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, ___, 98 L. Ed. 2d 286, 302, 108 S. Ct. 364, 373-74.

Although the parties agree on the proper standard to determine whether this arbitration award violates public policy, they sharply disagree on its application. AFSCME asserts that because there is a strong public policy favoring binding arbitration, the arbitration award must expressly contravene the Constitution or a statute before a court should vacate it. (See *Meissner v. Caravello* (1954), 4 Ill. App. 2d 428, 432-32; *United States Postal Service v. National Association of Letter Carriers* (D.C. Cir. 1987), 810 F.2d 1239, 1241.) Additionally, AFSCME contends that the public policy against reinstating employees found guilty of mistreatment of a service recipient is *not* found in explicit laws and legal precedents but rather from general considerations of public policy. (See *W. R. Grace & Co. v. Local Union 759* (1983), 461 U.S. 757, 76 L. Ed. 2d 298, 1203 S. Ct. 2177.) Alternatively, AFSCME argues that even if there had been a violation

of an explicit public policy that retarded patients are entitled to receive proper care and treatment, the Department has failed to prove that suspension rather than a discharge, under the circumstances of this case, constitutes a violation of that policy. The appellate court in our case agreed with AFSCME and held that suspension rather than discharge did not contravene public policy. (158 Ill. App. 3d at 593.) The Department conversely submits that reinstatement of mental health workers found guilty of mistreatment of a service recipient contravenes express public policy in Illinois. Further, the Department asserts that public policy prohibits enforcing awards that create a serious potential danger to the health or lives of third persons. Compare *Iowa Electric Light & Power Co. v. Local Union 204 of the International Brotherhood of Electrical Workers* (8th Cir. 1987), 834 F.2d 1424 (reinstatement of employee discharged for deliberately violating federally mandated safety regulations violated public policy), with *Johns-Manville Sales Corp. v. International Association of Machinists, Local Lodge 1609* (5th Cir. 1980), 621 F.2d 756 (reinstatement of employee discharged for smoking in asbestos plant did not violate public policy because it is principally a threat to the smoker); see also Note, *United States Postal Service v. American Postal Workers: The Incredible Expanding Public Policy Exception to Arbitration Finality*, 21 Willamette L. Rev. 631, 643 (1985).

We acknowledge the important public policy of this State's commitment to compassionate care for the mentally disabled. This case, however, also involves the public policy of promoting constructive relationships between public employers and public employees, and the public policy which requires finality in arbitration awards. (See Ill. Rev. Stat. 1985, ch. 48, par. 1602.) The collective-bargaining agreement as interpreted by the arbitrator does not violate any explicit public policy that is

well defined and dominant. There is simply no policy that mandates the discharge of all employees found guilty of mistreatment of a service recipient when the arbitrator expressly finds that the grievants were exemplary mental health employees, when punishment has been imposed, and where no nexis exists between the infraction and the patient's tragic death. It is important to note that grievants' infraction did not involve abusive mistreatment directed toward any resident. Although grievants' conduct may be classed as "mistreatment of a service recipient," there are varying degrees of this violation. The violation here did not result in any injury to or abusive treatment of a resident.

While courts refuse to enforce an arbitration award that requires violation of law (*American Postal Workers Union v. United States Postal Service* (9th Cir. 1982), 682 F.2d 1280), we need not measure the arbitrator's award in this case by that standard. The Department's reliance on *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, as grounds for mandating that this arbitration award be vacated as against public policy, is misplaced. In *Board of Trustees of Community College District No. 508*, this court refused to enforce an arbitration award because the award sanctioned violations of the law. (74 Ill. 2d at 425-26.) The award was repugnant to public policy because enforcement of the award would have benefitted those teachers engaged in an unlawful strike at the expense of those not engaged in it. The arbitration award, in the case at bar, does not even remotely sanction violations of the law. The arbitrator's award does not approve of grievants' conduct. The grievants were punished for their conduct. They were suspended for four months without back pay or benefits.

Moreover, we are not prepared to say that the arbitrator's decision to reinstate these grievants poses a

threat of harm or danger to third persons and thereby violates public policy. The arbitrator's order of reinstatement is specifically premised upon his judgment that the grievants would be able "to return to the useful employ of the Employer and provide appropriate services to the residents without the likelihood of a repetition of the occurrences of April 28, 1985." Notably, the arbitrator's conclusion that these grievants would provide appropriate services in the future is supported by article IX, section 1, of the collective-bargaining agreement, which, as previously noted, provides that "[t]he Employer agrees with the tenets of progressive and corrective discipline." Progressive and corrective discipline recognizes that the degree of the penalty should fit the crime. In this regard, it has been stated:

> " 'Offenses are of two general classes: (1) those extremely serious offenses such as stealing, striking a foreman, persistent refusal to obey a legitimate order, etc., which usually justify summary discharge without the necessity of prior warnings or attempts at corrective discipline; (2) those less serious infractions of plant rules or of proper conduct such as tardiness, absence without permission, careless workmanship, insolence, etc., which call not for discharge for the first offense *** but for some milder penalty aimed at correction.' " (Emphasis added.) (F. Elkouri & E. Elkouri, How Arbitration Works 671 (4th ed. 1985).)

Thus, it is clear from the foregoing that the award drew its essence from the collective-bargaining contract. The grievants' absence from work without permission would typically constitute a minor infraction; however, because the residents at the Howe Center are completely dependent upon the staff, even minor, unintentional neglect can have serious repercussions. In this regard, although the arbitrator found no proximate cause between the grievants' infraction and the resident's tragic death, he held that the conduct was serious enough to warrant

suspension for four months without back pay. Under these facts, we are not prepared to say that public policy mandates that these grievants be discharged.

For these reasons, the judgment of the appellate court is affirmed and the cause is remanded to the circuit court of Cook County with directions to order enforcement of the arbitrator's award.

*Affirmed; cause remanded with directions.*

JUSTICE STAMOS took no part in the consideration or decision of this case.