AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AFL-CIO, Plaintiff-Appellant, v. THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES et al., Defendants-Appellees.

Fourth District   No. 4—94—0519

Argued November 15, 1994.—Opinion filed June 8, 1995.

STEIGMANN, J., dissenting.

Gilbert Feldman (argued), of Cornfield & Feldman, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General (argued), of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

On September 11, 1991, plaintiff American Federation of State, County and Municipal Employees (AFSCME) filed a grievance from a decision by defendants Illinois Department of Children and Family Services (DCFS) and Illinois Department of Central Management Services (CMS). The decision placed Vera DuBose (grievant), an AFSCME member and a child welfare specialist II, on 30 days' suspension pending discharge for allegedly falsifying a uniform progress report and failing to prepare service plans for a family under DCFS care. Apparently, DuBose falsely stated she had seen three minors in February 1990 and they were "doing fine" when, in fact, those children had died in a fire earlier.

After defendants discharged grievant on October 1, 1991, the grievance was submitted to arbitration pursuant to the parties' collective-bargaining agreement. On February 23, 1992, following a hearing, the arbitrator sustained the grievance and reinstated her to employment. The decision was based upon the failure of defendants to proceed with disciplining grievant within the time frame contained in the collective-bargaining agreement for such action.

The parties are subject to the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 1992)), section 8 of which requires that arbitration provided for in a collective-bargaining agreement be conducted pursuant to the Uniform Arbitration Act (Act) (710 ILCS

5/1 *et seq.* (West 1992)). (5 ILCS 315/8 (West 1992).) Sections 11 and 12 of the Act provide for circuit court proceedings to confirm and vacate, respectively, awards rendered by arbitration under the Act. (710 ILCS 5/11, 12 (West 1992).) On May 21, 1992, defendants filed an application in the circuit court of Sangamon County to vacate the arbitrator's award of February 23, 1992, on the ground that reinstating grievant was contrary to public policy. After a hearing, the circuit court agreed with defendants and entered an order on September 23, 1992, vacating the award and remanding to the arbitrator to decide the merits of the discharge. The question of the propriety of this order is the heart of the case. We conclude that the court erred in entering the order and that order vitiated the rest of the proceedings.

Subsequent procedures require only brief mention. On remand to the arbitrator, AFSCME made a "demur," electing to stand on the arbitrator's decision which was based on the untimeliness of defendants' disciplinary action against grievant. The arbitrator, Edwin H. Benn, correctly concluded that the circuit court order required him to hear the merits and, in the face of plaintiff's "demur," he was required to decide the issue in favor of defendants. On November 12, 1992, AFSCME filed a petition in the circuit court of Cook County under sections 11 and 12 of the Act asking the court to confirm the first order of the arbitrator and to vacate the last award which favored defendants. The venue was transferred to the circuit court of Sangamon County and that court entered an order on May 11, 1994, denying all of the relief requested.

■ AFSCME has appealed. The appeal inherently encompasses the propriety of the interlocutory order of February 23, 1992. That order was neither final nor otherwise appealable and is reached now for the first time. The fact that the circuit clerk gave a different number to the petition of AFSCME to the proceedings after the second order of the arbitrator does not preclude review of the propriety of the February 23, 1992, order. See *Grames v. Illinois State Police* (1993), 254 Ill. App. 3d 191, 198-99, 625 N.E.2d 945, 952.

■ The court's review of an arbitration award is very limited and a labor arbitration award must usually be enforced if "the arbitrator acts within the scope of his authority." (*American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537.) The Supreme Court of Illinois has stated that a "narrow" exception to that rule exists when an award violates public policy. (*American Federation*, 124 Ill. 2d at 261, 529 N.E.2d at 540.) However, that court has never upheld such an exception in regard to discharge of public employees covered by a collective-bargaining agreement.

■ The time schedule for bringing disciplinary actions against employees, which was the basis of the arbitrator's original decision, was contained in article IX, section 1, of that agreement and stated:

> "Disciplinary action may be imposed upon an employee only for just cause. An employee shall not be demoted for disciplinary reasons. *Discipline shall be imposed as soon as possible after the employer is aware of the event or action giving rise to the discipline and has a reasonable period of time to investigate the matter.*
>
> *In any event, the actual date upon which discipline commences may not exceed forty-five (45) days after completion of the predisciplinary meeting.*" (Emphasis added.)

DCFS and CMS do not dispute the determination of the arbitrator that the procedure against the grievant here was not brought within that time frame.

DCFS and CMS maintain that the situation in this case is substantially the same as that before this court in *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)* (1993), 245 Ill. App. 3d 87, 614 N.E.2d 513, *appeal denied* (1993), 152 Ill. 2d 556, 622 N.E.2d 1203. There, this court affirmed a judgment of the circuit court of Sangamon County rejecting an arbitrator's award which set aside the discharge of an employee when the charges had been timely instituted. There, procedures were the same as those here and the two grievants had similar jobs and were found to have falsified reports by claiming to have interviewed people to whom they had not spoken. There, as here, the circuit court set aside the arbitrator's decision as being contrary to public policy.

In the former case, this court explained that a labor arbitration award was usually required to be enforced if the arbitrator acted within the scope of his authority, but if the award was against "paramount considerations of public policy" it could not stand. (*Central Management*, 245 Ill. App. 3d at 93, 614 N.E.2d at 516.) This court then said:

> "A court's refusal to enforce an arbitrator's award because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. ([*United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, 42, 98 L. Ed. 2d 286, 301, 108 S. Ct. 364, 373; *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board* (1991), 216 Ill. App. 3d 990, 998, 576 N.E.2d 471, 476].)" *Central Management*, 245 Ill. App. 3d at 93, 614 N.E.2d at 517.

In *Central Management*, as here, the arbitrator ruled on a procedural matter rather than on the merits. There, as here, the

collective-bargaining agreement stated as follows in article X, section 1:

> "The Employer agrees with the tenets of progressive and corrective discipline. Disciplinary action or measures shall include only the following:
>
>> (a) Oral reprimand;
>> (b) Written reprimand;
>> (c) Suspension (notice to be given in writing); and
>> (d) Discharge (notice to be given in writing).
>
> Disciplinary action may be imposed upon an employee only for just cause."

There, the arbitrator concluded that the terms of the contract indicated an emphasis on rehabilitation of employees and that the punishment rendered by the employer was based upon the high-profile nature of the agency involved and the need to set an example for other employees. The arbitrator upset the discharge because he thought it deviated from the terms and spirit of the contract, which placed emphasis on progressive discipline, thus emphasizing rehabilitation of the employee rather than punishment of the employee. Nevertheless, that arbitrator indicated that progressive discipline was not required in every case but that the punishment was too severe there. *Central Management*, 245 Ill. App. 3d at 91-92, 614 N.E.2d at 515-16.

■ This case is similar to *Central Management* in that the result of the arbitration would saddle an important governmental agency, DCFS, with an employee who was likely to be very unreliable and dishonest. However, no precedent has been called to our attention for eliminating the time frame for bringing a discharge action contained in a collective-bargaining agreement if the charged employee is shown to be very unreliable and dishonest.

The existence of time frames for bringing various types of actions is a well-recognized aspect of our governmental policy. Prosecution for various criminal offenses, except various types of murder, involuntary manslaughter, reckless homicide, treason, arson or forgery, are barred if not timely commenced. (See 720 ILCS 5/3—5 (West 1992).) A well-recognized possible result of such policy is that the guilty may go free or that those tortiously injured may not be compensated.

This case differs from *Central Management* in that there the arbitrator made an unreasonable decision which was beyond his discretion and beyond that which would have been anticipated when the collective-bargaining agreement was entered into. Here, in originally sustaining the grievance because charges were not timely

brought, the arbitrator was upholding the essence of the collective-bargaining agreement. (See *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361.) That bad employees would be able to retain their jobs when charges were untimely brought was surely fully considered at the time the collective-bargaining agreement was made just as the legislature surely considered the bad results from statutes of limitation. In both cases the protections afforded by the time limits must have been considered to outweigh the damages to the rest of the public.

Application of a public policy exception to the operation of limitation periods for discharged public employees under collective-bargaining agreements would appear likely to further complicate those proceedings because, when the timeliness of charges is made an issue, the arbitrator would often have to take proof on the merits in order to determine whether the conduct of the employee was gross enough to negate the operation of the limitation period.

We also note that the danger to the public from an outrageous decision of an arbitrator is something from which a public agency cannot protect itself absent the public policy exception involved here. The public agency can protect the public from being required to retain a grossly bad employee because of the limitation for bringing action against the employee contained in a collective-bargaining agreement by taking timely action.

As the Supreme Court of Illinois in *American Federation* indicated the limited nature of the public policy exception, we would not extend it to permit disregard of the time limitations set forth in public collective-bargaining agreement.

We reverse the orders of the circuit court of September 23, 1992, and May 11, 1994. We remand to the circuit court with directions to remand to the arbitrator with directions to reinstate the order of February 23, 1992, reinstating the grievant and to determine the back pay to which she is entitled.

Reversed and remanded.

COOK, J., concurs.

JUSTICE STEIGMANN, dissenting:
I respectfully dissent.
Despite my disapproval of the unexplained tardiness of DCFS—in violation of its labor agreement with AFSCME to discipline social workers in a timely fashion—I disagree with the majority's reversal

of the circuit court's decision that reinstating the grievant to her employment violated public policy.

The majority has quoted article IX, section 1, of the collective-bargaining agreement, which contains the time-limitation provision. The underlying facts demonstrate that this provision ought not be given effect at the expense of the public policy exception. Here, the employee, DuBose, had filed an official report with DCFS on March 28, 1990, falsely stating she had seen three minor girls in February 1990 and they were "doing fine." The children had in fact died in a fire on January 16, 1990. DuBose was transferred to another unit on March 30, 1990, and her successor discovered the children's death by fire on August 7, 1990. An internal investigation ensued and an investigator was assigned the case on August 22, 1990; the case was taken from him within days, but reassigned to him on October 9, 1990. On December 12, 1990, he completed his investigation and submitted his report to his supervisor. He concluded DuBose falsified the March 28 report and failed to prepare service plans for the family after the grandmother was appointed guardian in 1987.

On July 20, 1991, DuBose and AFSCME were informed a predisciplinary meeting would be held. At that meeting on July 24, 1991, grievant was charged with falsifying the March 28, 1990, report and failing to prepare the service plans for that family for 1988, 1989, and 1990. After AFSCME filed its rebuttal, a hearing officer issued a report on September 2, 1991, recommending grievant be suspended for 90 days. On September 11, 1991, she was notified she was placed on 30-day suspension, and AFSCME filed a grievance. On October 1, DCFS notified grievant that she was discharged effective October 4, 1991.

The majority is correct that the issue in this case is how to apply the public policy exception to enforcing an arbitrator's decision. However, I do not agree with the majority that *Central Management* is distinguishable from the present case.

The majority apparently agrees with AFSCME's argument that bringing charges of wrongdoing within a certain time limit is a part of our public policy arising from legislation. It then further cites the statutes of limitation for criminal cases, as well as for bringing various types of civil suits, and appears to compare the time limits in this case with those *statutory* time limits.

My problem with the majority's analysis is that the time limit for bringing disciplinary action—which DCFS breached in the present case—is *contractual*, not *statutory*. The only statutory aspect of this case is that the legislature passed a statute authorizing collective bargaining, which in turn led to the contractual provision at issue

here. If the majority's analysis of the statutorily based legitimacy of the time limit at issue were to stand, I do not see any principled basis upon which to distinguish between the time limit provisions of this contract and any other contractual provision. Essentially, the majority renders all contractual provisions statutorily based and equally immune from being "trumped" by the public policy exception.

Public policy is to be found in the State's constitution and *statutes* (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878) not in collective-bargaining agreements. The majority treats the time-limitation provision of the collective-bargaining agreement as if it were a *statute* that reflected public policy. It is not, and the majority cites no precedent to support its equating statutes with mere provisions in collective-bargaining agreements.

The majority is correct that affirming in this case would disregard express provisions of a collective-bargaining agreement, but so what? By definition, if the award in question is against "paramount considerations of public policy" (*Central Management*, 245 Ill. App. 3d at 93, 614 N.E.2d at 516), that award cannot be permitted to stand, even if it resulted from disregarding an express provision of the collective-bargaining agreement.

Further, in a real-world sense, this court must consider the consequences of reversing in this case. The majority suggests that DCFS can protect itself from disastrous results by proceeding in a timely fashion. Of course it could have and should have, but given that it failed to do so, does that mean that DCFS must be forced to hire back some social worker no matter how egregious her conduct?

I phrase the question in that fashion because, if this opinion stands, that is the consequence we must face. In other words, using a worst case scenario as an example, if a social worker affirmatively knew that one of her wards was being abused or tortured (and maybe even witnessed that abuse) but lied about what steps she supposedly took to ensure the child's safety, DCFS nonetheless would be prohibited by this decision from firing that social worker—public policy be damned—if DCFS failed to bring disciplinary action in a timely fashion.

In sum, I agree with the State that the contractual provision at issue in this case is just like any other such provision, as in *Central Management*, which can be disregarded if the arbitrator's action violated public policy.