**Philadelphia Parking Authority v. Transport Workers' Union of America, Local 700, AFL-CIO**

*Michael Casey,* for plaintiff.
*Thomas R. Yorko,* for defendant.

Di VITO, J., August 10, 2010—

## PROCEDURAL HISTORY

On March 5, 2009, the Philadelphia Parking Authority (authority) filed a petition to vacate arbitration award with the court of common pleas. The petition sought to vacate the February 3, 2009 arbitration award made pursuant to the collective bargaining agreement (CBA) between the authority and the Transport Workers Union of America, Local 700 AFL-CIO (union) on February

8, 2010, this court denied and dismissed the authority's petition. The authority subsequently filed this appeal.

## FACTUAL HISTORY

Corinthian Rivers was employed by the authority, working as a cashier at an off-street parking facility located at 8th Street and Chestnut Street in Philadelphia, and was represented by the union under the CBA. On June 3, 2008, Rivers received a $95.75 gratuity from a customer, which she split with her fellow authority cashier Clara Simmons. An authority supervisor witnessed the two cashiers splitting the gratuity, which triggered an audit and investigation by the authority. Rivers was suspended on June 9, 2008, and on June 13, 2008, the authority terminated her employment for "just cause" following a grievance hearing in accordance with the CBA.

On July 1, 2008, the union filed a demand for arbitration with the American Arbitration Association. The arbitration hearing took place on December 2, 2008. On February 3, 2009, the arbitrator's opinion was sent to the authority and the union, upholding the union's grievance against the authority and ordering the authority to reinstate Rivers to her former position, and to make her whole without losing any seniority rights or benefits.[1] The arbitrator concluded that the authority had not made any showing that Rivers had received the gratuity in exchange for some act or omission on her part, and thus had not violated the authority's no-tipping policy.

-------

1. The arbitrator also noted that Rivers' back pay should be reduced by $300 on account of the tips she had received during her employment with the authority.

## DISCUSSION

Grievance arbitration is statutory and mandatory for Pennsylvania public employers and unions under the Public Employe Relations Act, 43 P.S. §1101.101 et seq. (PERA). In *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007), the Pennsylvania Supreme Court addressed the standard of judicial review of a grievance arbitration award under PERA, and affirmed the "essence test" as the proper standard of review. The court also carved out a narrow exception to the essence test, by which the arbitrator's decision could be vacated if its ruling violates the public policy of the Commonwealth. *Id.* at 665, 939 A.2d at 865. The arbitration award in the case at hand satisfies the essence test and does not violate public policy, and thus should not be vacated by any reviewing court.

The essence test involves a two-prong inquiry:

"First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement." *Westmoreland,* at 661, 939 A.2d at 863. (citation omitted)

The first prong is a question of the arbitrator's jurisdiction over the matter, and is satisfied if the issue at the center of the grievance arbitration falls within the terms of the CBA. PERA 43 P.S. §1101.903 ("The arbitration of disputes or grievances arising out of the interpretation

of the provisions of a collective bargaining agreement is mandatory"). The second prong requires satisfaction of the first prong plus a rational relationship between the arbitrator's award and the "essence" of the CBA.

Because the General Assembly has codified its intent that decisions made by arbitrators should be final and binding upon the parties, judicial deference to arbitration awards is generally encouraged. *Id.* If the arbitrator's award follows logically from a rational interpretation of the CBA, then it is sufficient to satisfy this second prong. The reviewing court should respect the arbitrator's interpretation, if it "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Westmoreland,* at 660, 939 A.2d at 862 (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969)). In applying the essence test, a court may not weigh one rational interpretation of the CBA against another, nor may it substitute its judgment for that of the arbitrator. *Northwest Area School District v. Northwest Area Education Association,* 954 A.2d 111 (Pa. Commw. 2008).

Both prongs of the essence test are satisfied in this case. The first prong is satisfied, as neither party disputes that the issue of whether Rivers' alleged conduct violated the no-tipping policy—and thus constituted "just cause" for her termination—falls within the terms of the CBA. With regard to the second prong, the authority argues that it has not been satisfied, contending that the arbitrator's award was not rationally derived from the CBA. This argument has no merit.

The authority bases its argument on the assumption that "a favor or compensation is always implied when a

gratuity is received for a service." The Philadelphia Parking Authority's statement of matters complained of on appeal, para. 3.1. The presumption that acceptance of a gratuity automatically implies some sort of favor or compensation is not supported by the language of the CBA or the authority's written policy in the manual titled "Philadelphia Parking Authority Off-Street Operations Department Policy & Procedures and Plan of Succession" (manual). The "no-tipping policy" found at paragraph B, subsection 14 of the manual states:

"B. Categories for serious disciplinary action

"14. Acceptance of loans, gratuities, monetary or otherwise for favors or compensation from a party doing business with the authority, including customers. the above offenses can lead to immediate termination . . ."

The authority produces no evidence and cites no authority that would support its assertion that a favor or compensation is always implied when an employee receives a gratuity. If this were true, the phrase "for favors or compensation" would be entirely devoid of any independent meaning. We cannot endorse such an interpretation as exclusive, and thus cannot say that the arbitrator's ruling—which was based on a different interpretation—was not rationally derived from the CBA.

The arbitrator's interpretation that paragraph B, subsection 14 of the manual requires actual evidence of the existence of some favor or compensation in order for the no-tipping policy to be violated is rationally derived from the CBA. Examining the plain language of paragraph B, subsection 14, one could interpret the inclusion of the qualifying phrase "for favors or compensation" to place a condition upon the acceptance of gratuities necessary

for such an act to require serious disciplinary action. Under this interpretation, without any showing that a favor or compensation was performed or given by the authority employee, the mere acceptance of a gratuity is not sufficient to establish that the employee violated the no-tipping policy. By the authority's own admission, "no evidence was offered at the arbitration which described the exact favor or compensation that Rivers provided to the customer on June 3, 2008." The Philadelphia Parking Authority's statement of matters complained of on appeal, para. 32.

While the essence test is designed to foster judicial deference toward arbitration decisions, the Pennsylvania Supreme Court has carved out a narrow exception to that test which requires that courts vacate an arbitrator's award "if it is violative of the public policy of the Commonwealth." *Westmoreland,* at 665, 939 A.2d at 865. This limited public policy exception is consistent with the general rule that "a court will not enforce a contract which is unlawful or in violation of public policy." *Id.* at 662, 939 A.2d at 863 (quoting *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 42 (1987)). A valid public policy in the context of this exception must be well-defined, dominant and "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 666, 939 A.2d at 866.

The standard of review in addressing this public policy exception is to determine "whether the arbitrator's award violated a public policy of the Commonwealth of Pennsylvania, not whether the misconduct giving rise to the award" violated a specific policy or work rule of the employing agency in the case being reviewed. *Pennsyl-*

*vania Turnpike Commission v. Teamsters Local Union No. 250,* 948 A.2d 196 (Pa. Commw. 2008). Pennsylvania courts have asserted that "[t]here is no public policy that mandates the discharge of all employees who are alleged to have committed [a] misconduct." *Id.* at 207 (*citing AFSME v. State of Illinois,* 124 Ill.2d 246, 529 N.E. 2d 534 (1988). The burden of establishing that the arbitrator's award comes within the public policy exception lies with the party asserting its application. *Westmoreland* at 662-63, 939 A.2d at 864.

In this case, the authority argues that upholding the arbitrator's decision would violate the public policy of the City of Philadelphia and the Commonwealth of Pennsylvania. The authority argues that because Rivers is an employee of the authority, a government agency with public and statutory responsibilities for collecting parking revenue, enforcement of the arbitrator's award would "undermine the public's trust in the authority and would further compromise the integrity of the authority's operations." The Philadelphia Parking Authority's statement of matters complained of on appeal, para. 5.2. To support this proposition, the authority cites provisions of the Philadelphia Home Rule Charter and the Pennsylvania Public Official and Employee Ethics Act which address, to varying degrees, rules and guidelines for the acceptance of gratuities or compensation by public officers or employees.

Without having to decide whether these laws are sufficient to comprise a well-defined and dominant public policy, this argument fails on its own terms. Section 10-105 of the Philadelphia Home Rule Charter prohibits officers or employees of the city from soliciting or accepting "any compensation or gratuity in the form of

money or otherwise *for any act or omission* in the course of his public work." (emphasis added) The Legislature's inclusion of the condition that the gratuity must be accepted in exchange for the public employee's commission of some act or omission necessarily requires that more than just the mere acceptance of gratuity be proven in order for it to be prohibited by this rule. The authority's use of the Pennsylvania Public Official and Employee Ethics Act, 65 Pa.C.S. §1101 et seq., as support should not be seen as persuasive, as Ms. Rivers does not fall within the classification of "public official" or "public employee" as defined by section 1102 of that statute.

The parties in this case specifically bargained in their CBA for all factual issues in a grievance proceeding to be determined by an arbitrator and not the reviewing courts. The arbitrator found in his fact-specific inquiry that "the authority did not show that the gratuity was given as part of an exchange for a favor performed by Rivers" and thus she did not violate the no-tipping policy. Enforcement of this arbitration award does not violate any public policy of the Commonwealth, as the language of the authority's no-tipping policy—which requires a showing of "favors or compensation"—is not contrary to, but rather reflective of the Legislature's intent in including the condition in section 10-105 of the Philadelphia Home Rule Charter requiring the showing of some "act or omission" on the part of the employee.

This is not a case where enforcement of the arbitrator's award must necessarily require the violation of a public policy of the Commonwealth. See *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees,* 956 A.2d 477 (Pa. Commw. 2008) (court recognized well-defined and dominant public

policy against sexual harassment in the workplace and determined that it would undermine public policy for the arbitrator to "[t]o find substantial evidence supporting some type of disciplinary action for Title VII purposes but not for purposes of a 'just cause' provision in the CBA."); *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA-NEA,* 977 A.2d 1205 (Pa. Commw. 2009) (Arbitrator's reinstatement of classroom assistant who had suffered adverse reaction to illicit drugs while at school ruled to have contravened strong public policy of educating children about the dangers of drug abuse, as it would demonstrate tolerance for illicit drug use, in direct contravention of public policy.). The facts as determined by the arbitrator established nothing beyond the mere acceptance of the gratuity, which in and of itself is not expressly against any well-defined public policy.

The essence test is satisfied in this case, and the authority does not properly invoke the narrow public policy exception. Therefore; the denial of the authority's petition to vacate arbitration award should be affirmed.