THE STATE OF ILLINOIS *et al.*, Plaintiffs-Appellants, v. AFSCME, COUNCIL 31, Defendant-Appellee.

Fifth District    No. 5—99—0688

Opinion filed May 16, 2001.

Jerald S. Post, Assistant Attorney General, of Chicago, for appellants.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The Department of Corrections and the Department of Central Management Services (collectively the Employer) appeal from the Jefferson County circuit court's order denying its petition to vacate an arbitration award and granting a motion filed by AFSCME, Council 31, AFL-CIO (the Union), to confirm the award. On appeal, the Employer claims that the arbitration award must be vacated because the award which reinstates the employee violates public policy and because the arbitrator did not expressly determine that the employee was amenable to discipline.

The pertinent facts follow. On August 13, 1998, the Department of Corrections terminated Ronald Henderson from his employment as a correctional officer at the Big Muddy River Correctional Center. Mr. Henderson had been hired as a correctional officer on September 14, 1981. He was assigned to Big Muddy River Correctional Center in 1993. In March 1998, Mr. Henderson had an altercation with an inmate. Another inmate, who had witnessed the skirmish, reported the incident to prison officials, and an investigation was launched. Following the investigation, an employee review hearing was conducted. The hearing officer determined that charges that Mr. Henderson violated rules regarding the use of force and documentation of such incidents were substantiated, and the hearing officer recommended that Mr. Henderson be placed on suspension pending discharge. The warden concurred in the recommendation and Mr. Henderson was discharged.

Mr. Henderson filed a grievance. A hearing was held on March 4, 1999. On March 26, 1999, the arbitrator issued his written decision. The arbitrator determined that a fight, involving Mr. Henderson and an inmate, had occurred on March 18, 1998. The arbitrator found that Mr. Henderson had engaged in misconduct by initiating the use of force against an inmate and by failing to report the incident. The

arbitrator made this determination after weighing the testimony of the employee and the witnesses and concluding that the inmates' accounts were more credible than the employee's account.

In the decision, the arbitrator outlined his findings regarding the events that led to the fight. On March 18, 1998, an inmate, who was walking to the dining room, turned to Mr. Henderson, the correctional officer on duty at that time, and called him a "crack head." This inmate had taunted Mr. Henderson in a similar manner in the past. After dinner, Mr. Henderson confronted the inmate while he was playing dominos with two other inmates. Mr. Henderson asked the inmate not to call him a crack head again. A heated discussion followed. The inmate repeated his taunt. When Mr. Henderson directed him to refrain, the inmate yelled, "fuck you crack head," and stated, "I have freedom of speech." Mr. Henderson then punched the inmate in the face. The inmate returned a punch and the fight ensued. Another inmate joined in, striking Mr. Henderson twice. Mr. Henderson fell to the floor. At that point, the fighting stopped. Eventually, a third inmate reported the incident.

After determining that Mr. Henderson had violated rules of employment, the arbitrator turned to the issue of discipline. In reaching his decision, the arbitrator balanced aggravating and mitigating factors to determine whether a discharge was the appropriate penalty. The mitigating factors noted in the award were: (1) the employee had 16 years of seniority at the time of his discharge, (2) all of his evaluations indicated that he met expectations in all areas except attendance and, thus, was considered a good employee, (3) there was no evidence of prior personnel problems with the employee, and (4) there was no premeditation on the part of the employee. After weighing these factors, the arbitrator found that the discharge was not for just cause. He reinstated Mr. Henderson to his former position without loss of seniority but with no back pay.

The Employer filed an application to vacate the arbitration award in the circuit court of Jefferson County. The Union filed a motion to confirm the arbitration award. After a hearing, the circuit court denied the Employer's petition to vacate the award and confirmed the arbitration award.

■ Judicial review of an arbitration award is extremely limited. *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 261, 529 N.E.2d 534, 540-41 (1988) (*AFSCME*); *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304, 671 N.E.2d 668, 672 (1996) (*Central Management*). A court will enforce an arbitration award if the arbitrator acts within the scope of his authority and

the award draws its essence from the parties' collective bargaining agreement. *Board of Education of the City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 474, 427 N.E.2d 1199, 1200-01 (1981). This is because the parties to the agreement bargained for the arbitrator's construction of the contract, and a court has no business overruling him because its interpretation of a contract provision is different from his. *Central Management*, 173 Ill. 2d at 305, 671 N.E.2d at 672.

■ Courts have carved out a public policy exception to vacate arbitration awards that otherwise are based in a collective bargaining agreement. *Central Management*, 173 Ill. 2d at 306, 671 N.E.2d at 673; *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987). This exception is a narrow one and is invoked only when a contravention of public policy is clearly shown. *AFSCME*, 124 Ill. 2d at 261, 529 N.E.2d at 540-41. In order to vacate an arbitrator's award on public policy grounds, some provision of the contract, as interpreted by the arbitrator, must violate some explicit and dominant public policy. *Central Management*, 173 Ill. 2d at 307-08, 671 N.E.2d at 673.

■ The public policy exception requires a two-step analysis. The initial question is whether a well-defined public policy can be identified. If there is a definitive public policy, then the next question is whether the arbitrator's award, as reflected in his interpretation of the agreement, violated public policy. *Central Management*, 173 Ill. 2d at 307-08, 671 N.E.2d at 674; *Misco, Inc.*, 484 U.S. at 43-44, 98 L. Ed. 2d at 302-03, 108 S. Ct. at 373-74. Ultimately, the exception's applicability to a case is necessarily fact dependent. *Central Management*, 173 Ill. 2d at 311, 671 N.E.2d at 675.

In this case the arbitrator found that Mr. Henderson was guilty of misconduct by inappropriately initiating the use of force against an inmate and by not reporting the incident but that because of mitigating factors, discharge was not for just cause. The arbitrator reinstated the employee to his former position without a loss of seniority but with no back pay.

The Employer contends that the award reinstating Mr. Henderson violates public policy. That there is a public policy against battering prisoners (730 ILCS 5/1—1—2(c) (West 1992)) is not disputed. The question is whether the arbitrator's award of reinstatement actually violated that public policy. *Central Management*, 173 Ill. 2d at 307-08, 671 N.E.2d at 674; *Misco, Inc.*, 484 U.S. at 44, 98 L. Ed. 2d at 303, 108 S. Ct. at 373-74.

■ When an agreement contemplates that the arbitrator will determine remedies for contractual violations, such as in the case

here, it is the function of the arbitrator, not the court, to decide what disciplinary action is required and a court has no authority to disagree or to substitute its judgment. *Central Management*, 173 Ill. 2d at 306, 671 N.E.2d at 673. If the arbitrator makes a rational finding that the employee can be trusted to refrain from the offending conduct, the arbitrator may reinstate the employee to his or her former job and the courts would be obligated to affirm the award. *Central Management*, 173 Ill. 2d at 322, 671 N.E.2d at 680. However, if the arbitrator's construction of an agreement, including the remedy he fashions, violates public policy, an award based upon that construction may be vacated. *Central Management*, 173 Ill. 2d at 318, 671 N.E.2d at 678.

█ In this case, the parties had contractually agreed to a system of progressive and corrective discipline, and a suspension and a discharge were penalties available to the arbitrator. The Employer has not pointed to any contractual provision which requires that an employee be automatically terminated for hitting a prisoner. Nor did the Employer recite any statute or regulation that prohibits reinstatement for such conduct. Therefore, there is no evidence that an automatic termination was required for the proven misconduct under the collective bargaining agreement or any statute or regulation.

The arbitrator carefully balanced the aggravating and mitigating factors to determine whether the penalty was proportionate to the misconduct. In explaining the balancing process, the arbitrator specifically referenced and quoted from an opinion written by Arbitrator Malin (the Department of Management Services and the Department of Corrections, Arbitration No. 3029 (Malin, 1997)), who stated that a balance must be struck between the employee's investment in his job and expectation of job security and the risk to the employer posed by continuing to employ the employee.

After reviewing his decision, we conclude that the arbitrator made a rational determination that Mr. Henderson was amenable to discipline. It is clear to us that in reaching this decision, the arbitrator considered the potential of the employee to repeat his offense and the risk posed to the Employer and to the inmates of the facility. The arbitrator specifically noted that throughout 16 years of service, this employee had received good evaluations, had no history of prior personnel problems, and did not plan or provoke the fight. The arbitrator indicated that if the employee did not have a proven track record, he would have sustained the discharge. Implicit in the decision is the arbitrator's consideration of the public policy against battering prisoners and thoughtful determination that Mr. Henderson was amenable to rehabilitation and that the risk that he would engage in similar incidents in the future was low. There is no requirement that the

arbitrator expressly state that an employee is amenable to discipline. See *Central Management*, 173 Ill. 2d at 332, 671 N.E.2d at 685, citing *Stead Motors v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1213 (9th Cir. 1989). If it is clear from the award that the arbitrator made a rational finding that an employee could capably return to and perform his duties without impinging or undermining the public policy and without posing a risk to public safety and welfare and that the employee will refrain from the misconduct, the court is obligated to affirm the award.

In this case, the arbitrator imposed a measured but meaningful penalty after determining that the employee was guilty of misconduct, that he was a capable employee, that the risk of a repeat of the proven misconduct was low, that reinstatement posed little risk to the welfare of the inmates and the Employer, and that reinstatement was appropriate. Based upon this record, we cannot say that public policy mandated that Mr. Henderson be discharged.

Accordingly, the judgment of the circuit court denying the petition to vacate and confirming the arbitration award is affirmed.

Affirmed.

GOLDENHERSH and WELCH, JJ., concur.