NOTICE

Decision filed 06/04/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0663

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

THE DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES and THE
DEPARTMENT OF HUMAN SERVICES,

    Petitioners-Appellants,

v.

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 31, and RANDALL VALLEROY,

    Respondents-Appellees.

-----------------------------------------------------------

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 31,

    Petitioner-Appellee,

v.

THE DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES and THE
DEPARTMENT OF HUMAN SERVICES,

    Respondents-Appellants.

) Appeal from the
) Circuit Court of
) Randolph County.
)
)
)
)
)
)
)
)
)
)
)
)
)
) Nos. 08-MR-90 & 08-MR-92
)      (consolidated)
)
)
)
)
)
)
)
)
)
)
)
)
) Honorable
) William A. Schuwerk, Jr.,
) Judge, presiding.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioners, the Illinois Department of Central Management Services and the Illinois Department of Human Services (collectively, the Department), brought this action in the circuit court of Randolph County against respondents, the American Federation of State, County and Municipal Employees, Council 31 (AFSCME), and Randall Valleroy, a member of AFSCME and a security therapy aide I at the Chester Mental Health Center (Chester),

1

seeking to vacate an arbitration award that reinstated Valleroy to his former position. AFSCME countered with its own petition to confirm the arbitration award. The cases were consolidated. The circuit court denied the petition filed by the Department and granted the petition filed by AFSCME. The Department now appeals, arguing that (1) the arbitrator's award reinstating Valleroy to his position as a security therapy aide I must be vacated because it violates the public policy against employing health care workers found to have abused residents and (2) the circuit court erred in ordering Valleroy's name deleted from the health care worker registry. Equip for Equality, a private nonprofit organization whose stated mission is to safeguard the rights of people with physical and mental disabilities in Illinois, filed an *amicus curiae* brief. We affirm.

## BACKGROUND

Randall Valleroy was employed as a security therapy aide I at Chester, the maximum security forensic psychiatric hospital operated by the Illinois Department of Human Services. By all accounts, Valleroy was an excellent employee with no history of abuse toward patients until the incident in question, which occurred on January 13, 2007. On that date, Valleroy punched a patient, "W.G.," in the face or head area during an altercation. W.G. has a history of defiance and altercations with other staff members and residents.

According to reports of the incident, Valleroy told W.G. to sit in a chair in a particular location. W.G. initially complied but then left the area. Valleroy again directed W.G. to sit in the chair and escorted him back to the chair. However, when they arrived at the chair, an altercation ensued, which was initiated by W.G. When it was over, W.G. had two lacerations over his left eyebrow and some scratches on his neck. W.G. was subdued by other staff members and taken to a room, where he was restrained and treated by a staff nurse and a doctor. The Department's Office of the Inspector General investigated the incident and concluded that Valleroy physically abused W.G. The Department subsequently terminated

2

Valleroy.

After Valleroy filed a grievance, the matter went to arbitration. The arbitrator heard the testimony of several witnesses, including Valleroy, W.G., and seven members of the staff at Chester, and also considered the report of the Office of the Inspector General. After considering all the evidence, the arbitrator concluded that Valleroy intentionally struck W.G. and grabbed him by the neck in violation of the rules and regulations of the state and failed to report the abuse. However, because of mitigating circumstances, the arbitrator altered the form of discipline to an unpaid suspension and ordered Valleroy to be reinstated.

The arbitrator found that Valleroy had a reputation of being a good staff member who followed all the rules and techniques of nonviolent intervention. The arbitrator also found that Valleroy's performance evaluations since April 1, 2003, indicated that he exceeded expectations with regard to human relations, despite being assigned to the most violent unit at the hospital. The arbitrator further found that Valleroy had no prior problems of this nature despite having been hit numerous times in the past by patients. Because of the mitigating circumstances, the arbitrator ordered the discharge "converted to a disciplinary suspension and a final warning" with "no loss of seniority."

The Department filed a petition to vacate the arbitration award in the circuit court. AFSCME countered with an application to confirm the arbitration award. The cases were consolidated. Ultimately, the circuit court denied the motion to vacate and granted the motion to confirm the award. The circuit court found that the arbitration award was not against public policy, explaining, "It is clear from the award that the Arbitrator made a rational finding that Randall Valleroy could capably return to and perform his duties without impinging or undermining the public policy and without posing a risk to the public safety and welfare[] and that [Valleroy] will refrain from future misconduct." The circuit court further ordered the State to remove Valleroy's name from the health care worker registry pursuant

3

to section 1-17(g-5) of the Department of Human Services Act (the Act) (20 ILCS 1305/1-17(g-5) (West 2008)). The Department filed a timely notice of appeal.

ANALYSIS

I. Arbitration Award

The first issue raised by the Department is whether the arbitrator's award reinstating Valleroy to his position as a security therapy aide I at Chester must be vacated because it violates the explicit public policy against employing health care workers found to have abused residents. The Department argues that an arbitration award in contravention of public policy is not enforceable and that, by statute, the Department is precluded from employing any person who has been found to have abused a service recipient. AFSCME responds that the arbitrator made a rational finding that Valleroy is amenable to corrective discipline and that, therefore, the award reinstating Valleroy does not violate public policy. We agree with AFSCME.

The Department is correct that a court cannot enforce an arbitration award made pursuant to a collective bargaining agreement where the award violates public policy. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 260, 529 N.E.2d 534, 540 (1988) (*AFSCME I*). This doctrine is based upon the common law notion that courts will not lend judicial power to the enforcement of private agreements that are immoral or illegal. *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 42, 98 L. Ed. 2d 286, 301-02, 108 S. Ct. 364, 373 (1987). However, the public policy exception is an extremely narrow one and should "not otherwise sanction a broad judicial power to set aside arbitration awards." *Misco, Inc.*, 484 U.S. at 43, 98 L. Ed. 2d at 302, 108 S. Ct. at 373. "[T]he reinstatement of an employee who has violated an important public policy does not necessarily itself violate public policy." *City of Highland Park v. Teamster Local Union No. 714*, 357 Ill. App. 3d 453, 462, 828 N.E.2d 311, 318

4

(2005).

To vacate an award under the public policy exception, courts are required to undertake a two-step analysis. The first question is whether a well-defined and dominant public policy can be identified. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 307, 671 N.E.2d 668, 674 (1996) (*AFSCME II*). If so, the second question is whether the arbitrator's award, as reflected in his or her interpretation of the agreement, violates public policy. *AFSCME II*, 173 Ill. 2d at 307-08, 671 N.E.2d at 674.

The Department asserts that section 7.3 of the Mental Health and Developmental Disabilities Administrative Act (20 ILCS 1705/7.3 (West 2008)) sets forth a well-defined public policy against employing workers who have abused service recipients. It provides in pertinent part as follows:

"Health care worker registry; finding of abuse or neglect. The Department shall require that no facility, service agency, or support agency providing mental health or developmental disability services that is licensed, certified, operated, or funded by the Department shall employ a person, in any capacity, who is identified by the health care worker registry as having been subject of a substantiated finding of abuse or neglect of a service recipient." 20 ILCS 1705/7.3 (West 2008).

The arbitrator concluded that Valleroy intentionally struck W.G. and grabbed him by the neck, constituting physical abuse, but nevertheless, he ordered that Valleroy be reinstated. The Department insists that this was a violation of public policy. We disagree, relying on *AFSCME I*, 124 Ill. 2d 246, 529 N.E.2d 534.

In that case, the Illinois Supreme Court considered whether an arbitrator's award violated public policy in ordering the reinstatement of two mental health technicians who had made an unauthorized trip to a flea market during their shift. During their absence, an

5

unattended patient at the facility died. This patient was not assigned to the ward where the technicians were supposed to be on duty. The technicians were discharged for conduct constituting the mistreatment of a service recipient, and their union filed a grievance. The arbitrator's award ordered the reinstatement of the technicians on the basis that their absence did not constitute just cause for termination. On review, the supreme court refused to vacate the arbitration award of reinstatement on public policy grounds. While the supreme court acknowledged that the compassionate care of the mentally disabled is an important public policy, it found that the arbitration award ordering the reinstatement of the technicians did not conflict with any laws or legal precedent relating to this public interest:

"There is simply no policy that mandates the discharge of all employees found guilty of mistreatment of a service recipient when the arbitrator expressly finds that the grievants were exemplary mental health employees, when punishment has been imposed, and where no nexis exists between the infraction and the patient's tragic death." *AFSCME I*, 124 Ill. 2d at 263, 529 N.E.2d at 541.

That is the case here.

In the instant case, the arbitrator found that Valleroy had no prior history of abuse, despite having been hit by service recipients numerous times in the past while working in the most violent unit of the hospital. The arbitrator pointed out that since April 1, 2003, Valleroy's performance evaluations indicated that he exceeded expectations with regard to human relations. The arbitrator also pointed out that Valleroy was "surprised and stunned by W.G.'s initial assault" and "was in rather bad shape himself after the altercation." Most importantly, the arbitrator concluded that the record showed that Valleroy could capably return to work with nothing in the record to suggest that Valleroy would repeat the conduct.

Both parties have cited a multitude of cases in support of their positions. What this indicates is that the public policy exception's applicability to a case is necessarily fact-

6

dependent. Under the facts presented here, where Valleroy had no prior history of abuse despite working in our state's most violent mental health facility for several years and the service recipient, W.G., had a history of violence, we cannot say that public policy mandates that Valleroy be discharged.

To be sure, the compassionate care of the mentally disabled is an important public policy. *AFSCME I*, 124 Ill. 2d at 262, 529 N.E.2d at 541. Furthermore, we recognize that our General Assembly has mandated a health care worker registry, in order to prevent those who have been the subject of a substantiated finding of abuse from abusing again. However, it does not follow that Valleroy should not be reinstated.

There is a "long-standing principle that an employee's amenability to discipline is a factual determination which cannot be questioned or rejected by a reviewing court." *AFSCME II*, 173 Ill. 2d at 331-32, 671 N.E.2d at 685. Where an arbitrator has expressly or by implication determined that an employee can be rehabilitated and is not likely to commit an act that violates public policy in the future, a court would be hard-pressed to find a public policy barring reinstatement. *AFSCME II*, 173 Ill. 2d at 332, 671 N.E.2d at 685 (relying on *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1213 (9th Cir. 1989)). In *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 222 Ill. App. 3d 678, 584 N.E.2d 317 (1991), a parole officer was convicted in federal court of making false statements to the Department of Housing and Urban Development, a felony. He was discharged on the basis that his criminal conduct brought discredit to the Department of Corrections and constituted a violation of department rules. The arbitrator found that a discharge was not warranted, and on appeal, the department argued that the award violated public policy. Our colleagues in the First District disagreed, noting that other felons are employed as parole officers, the grievant's employment record was substantially unblemished, he was independently punished

7

for his criminal act, and the reinstatement was ordered without back pay. *Department of Central Management Services*, 222 Ill. App. 3d at 689, 584 N.E.2d at 323.

Here, we are mindful that the mentally disabled need compassionate care, and we are in no way condoning Valleroy's actions; however, the arbitrator specifically found that there was nothing in the record to indicate that Valleroy would repeat his actions. Valleroy was reinstated without back pay; thus, punishment was imposed. Valleroy's record before this incident was unblemished. He had received stellar evaluations for several years. The arbitrator's reinstatement of Valleroy takes into account the difficulty of dealing with the mentally disabled, especially violent service recipients such as W.G.

In its *amicus curiae* brief, Equip for Equality contends that allowing the arbitrator's award to stand will lead to further harm to people with mental illnesses who live in mental health facilities in Illinois. We disagree. We decline to reverse the circuit court's decision and vacate the arbitration award, as we do not believe Valleroy's reinstatement violates public policy.

## II. Health Care Worker Registry

The Department next contends that because the arbitrator did not overturn the imposition of discipline on Valleroy but agreed that he abused a service recipient and should be disciplined, the circuit court erred in ordering Valleroy's name to be deleted from the health care worker registry. The Department insists that there is no basis for the circuit court to confirm the arbitrator's award but then order the State to remove Valleroy's name from the health care worker registry. Equip for Equality similarly asserts that the circuit court's focus on Valleroy's reinstatement was in error because it is not the discipline that is determinative of whether a worker's name is placed upon the registry but rather the confirmation of the underlying abuse, which the arbitrator concluded did occur. AFSCME replies that the arbitrator did overturn the discharge "action" taken by the Department, so section 1-17(g-5)

8

of the Act requires that Valleroy's name be removed from the health care worker registry.

Section 1-17(g-5) of the Act provides in pertinent part as follows:

"Health care worker registry. After notice and an opportunity for a hearing that is separate and distinct from the Office of the Inspector General's appeals process as implemented under subsection (c) of this Section, the Inspector General shall report to the Department of Public Health's health care worker registry under Section 3-206.01 of the Nursing Home Care Act the identity of individuals against whom there has been a substantiated finding of physical or sexual abuse or egregious neglect of a service recipient.

Nothing in this subsection shall diminish or impair the rights of a person who is a member of a collective bargaining unit pursuant to the Illinois Public Labor Relations Act or pursuant to any federal labor statute. An individual who is a member of a collective bargaining unit as described above shall not be reported to the Department of Public Health's health care worker registry until the exhaustion of that individual's grievance and arbitration rights, or until 3 months after the initiation of the grievance process, whichever occurs first, provided that the Department of Human Services' hearing under this subsection regarding the reporting of an individual to the Department of Public Health's health care worker registry has concluded. Notwithstanding anything hereinafter or previously provided, if an action taken by an employer against an individual as a result of the circumstances that led to a finding of physical or sexual abuse or egregious neglect is later overturned under a grievance or arbitration procedure provided for in Section 8 of the Illinois Public Labor Relations Act or under a collective bargaining agreement, the report must be removed from the registry." 20 ILCS 1305/1-17(g-5) (West 2008).

We must determine what our legislature intended by enacting this statute.

9

Legislative intent is determined by examining the language of the statute, which is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000). Because all the provisions of a statutory enactment are viewed as a whole, "[w]ords and phrases should not be construed in isolation[] but must be interpreted in light of other relevant provisions of the statute." *Michigan Avenue National Bank*, 191 Ill. 2d at 504, 732 N.E.2d at 535. In determining the intent of the legislature, a court may properly consider not only the language of the statute but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *People v. Pullen*, 192 Ill. 2d 36, 42, 733 N.E.2d 1235, 1238 (2000). Legislative intent can be ascertained from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or another. *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233, 166 N.E.2d 574, 576 (1960). In construing a statute, we presume that our General Assembly did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504, 732 N.E.2d at 535.

We agree with AFSCME that the confirmation of the instant award would be meaningless if Valleroy's name remained on the registry because no facility is allowed to "employ a person, in any capacity, who is identified by the health care worker registry as having been subject of a substantiated finding of abuse or neglect of a service recipient." 20 ILCS 1705/7.3 (West 2006). The second paragraph of subsection (g-5) makes it clear that a health care worker charged with abuse cannot be deprived of his rights under the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2008)) or a collective bargaining agreement and that an arbitrator will determine whether or not the worker's name should remain on the registry.

This statutory scheme indicates that there must be a balance between protecting the

10

service recipients and protecting the rights of those who provide the services. If we accept the Department's interpretation, Valleroy would lose rights expressly protected under subsection (g-5). We decline to accept that interpretation where the arbitrator expressly found that Valleroy would not pose a threat to the mental health patients for whom he will be providing services.

As previously discussed, there is no policy that mandates the discharge of an employee found guilty of the mistreatment of a service recipient, especially when an arbitrator found that the grievant was an exemplary mental health employee and when punishment has been imposed. *AFSCME I*, 124 Ill. 2d at 263, 529 N.E.2d at 541. Even though the violation resulted in an injury to W.G., the injury was not severe and Valleroy was not without his own bumps and bruises. W.G. has a known propensity for violence; Valleroy was stunned and acting out of instinct. Valleroy has been reprimanded. To allow Valleroy's name to remain on the registry and render him unable to continue his employment would result in an injustice under the facts presented in the record before us and would be counter to the provisions of subsection (g-5). Under the totality of the circumstances, the arbitrator found that Valleroy should be reinstated to his position as a security therapy aide I. If Valleroy's name remained on the registry, he would be unable to continue in his position. The circuit court did not exceed its authority in ordering Valleroy's name to be deleted from the registry.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Randolph County confirming the arbitrator's award and ordering Valleroy's name to be deleted from the health care worker registry is hereby affirmed.


Affirmed.

11

WELCH and WEXSTTEN, JJ., concur.

NO. 5-08-0663

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

THE DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES and THE
DEPARTMENT OF HUMAN SERVICES,

     Petitioners-Appellants,

v.

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 31, and RANDALL VALLEROY,

     Respondents-Appellees.

-------------------------------------------------------

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
COUNCIL 31,

     Petitioner-Appellee,

v.

THE DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES and THE
DEPARTMENT OF HUMAN SERVICES,

     Respondents-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Randolph County.

Nos. 08-MR-90 & 08-MR-92
(consolidated)

Honorable
William A. Schuwerk, Jr.,
Judge, presiding.

---

**Opinion Filed**:     June 4, 2010

---

**Justices**:     Honorable Richard P. Goldenhersh, P.J.

                  Honorable Thomas M. Welch, J., and
                  Honorable James M. Wexstten, J.,
                  Concurring

---

**Attorneys**
**for**
**Appellants**

Lisa Madigan, Attorney General, Michael A. Scodro, Solicitor General, Jerald S. Post, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601; Karen I. Ward, Deborah Kennedy, Equip for Equality, Inc., 20 North Michigan Avenue, Suite 300, Chicago, IL 60602; Stacey Aschemann, Equip for Equality, Inc., 2150 West Main Street, Carbondale, IL 62901 (*amicus curiae* brief in support of petitioners)

---

**Attorney**
**for**
**Appellees**

Gilbert Feldman, Cornfield and Feldman, 25 East Washington Street, Suite 1400, Chicago, IL 60602