# Illinois Official Reports

## Appellate Court

*City of Des Plaines v. Metropolitan Alliance of Police, Chapter No. 240*,
2015 IL App (1st) 140957

| | |
|---|---|
| Appellate Court Caption | THE CITY OF DES PLAINES, Plaintiff-Appellee, v. METROPOLITAN ALLIANCE OF POLICE, CHAPTER NO. 240, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-0957 |
| Filed | March 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-21078; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Reimer & Karlson, LLC, of Hinsdale (Keith A. Karlson and Brian LaBardi, of counsel), for appellant.<br><br>Clark Baird Smith, LLP, of Rosemont (Yvette A. Heintzelman and James J. Powers, of counsel), for appellee. |
| Panel | JUSTICE LIU delivered the judgment of the court, with opinion.<br>Presiding Justice Simon concurred in the judgment and opinion.<br>Justice Pierce dissented, with opinion. |

**OPINION**

¶ 1   Plaintiff, City of Des Plaines (City), sought to terminate City police officer John Bueno (Bueno) after conducting an investigation into allegations that Bueno had used unnecessary or excessive force against arrestees and had failed to report that use of force in violation of the general orders of the Des Plaines police department (Department). Defendant, Metropolitan Alliance of Police, Chapter No. 240 (the Union), represented Bueno, and the parties submitted the grievance over his termination to arbitration. Although the arbitrator concluded that Bueno had violated certain general orders, he nevertheless determined that termination was not an appropriate remedy because of "due process" considerations–specifically, the City's delay in investigating the complained-of incidents and the Department's condonation of Bueno's conduct.

¶ 2   The City filed a motion to vacate the arbitration award in the circuit court, arguing that the award violated public policy. The circuit court agreed and vacated the arbitration award; it also denied the Union's motion to remand to the arbitrator for additional findings concerning Bueno's likelihood of engaging in the same misconduct following reinstatement. The Union appeals. We find that a remand to the arbitrator is necessary to clarify the award; in the absence of a clarification, we cannot fully assess its public policy implications. We therefore reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

¶ 3                                    BACKGROUND

¶ 4   Bueno had been a City police officer since 2002. In 2011, the city manager, Jason Slowinski (Slowinski), received a letter alleging that Bueno had physically beaten four arrestees, with the alleged instances occurring in 2009 and 2010. After receiving the letter, Slowinski initiated an investigation into the allegations.

¶ 5   Based on the investigation, the City identified three incidents where Bueno allegedly misapplied force against arrestees: (1) in August 2010, he punched in the face a handcuffed arrestee who was seated in the back of his squad car; (2) in January 2010, he punched an arrestee in the nose inside the police station; and (3) in June 2009, he pushed an arrestee in a holding cell. Bueno had not reported any of these incidents as required by Department General Order 10.01.[1]

---

[1] Des Plaines Police Department General Order 10.01 includes sections 10.01.1 ("Authority" related to use of force) and 10.01.10 ("Follow-up to Officer's Use of Force" related to reporting).

Section 10.01.1 provides: "Officers should use only the reasonable amount of force necessary to effect an arrest or control a person. The objective of the use of force is to overcome the resistance offered by an offender. *** Violations of the rules will only be the basis for administrative discipline, while violations of the law will be the basis for civil and criminal penalties in a court of law." Des Plaines Police Dep't G.O. 10.01, § 10.01.1.

Section 10.01.10 provides: "All officers will make an immediate verbal report to their supervisor following any use of force and file an appropriate case report that documents the actions of the suspect that necessitated the use of force, the reasons why the officer used force, as well as any suspect complaints of injury, medical treatment received, or refusal of medical treatment." Des Plaines Police Dep't G.O. 10.01, § 10.01.10.

¶ 6        After the investigation was complete, the City filed a complaint with the City's board of fire and police commissioners, requesting that Bueno be terminated. Bueno challenged his termination through grievance arbitration as allowed by the City-Union collective bargaining agreement. The City terminated Bueno, and the parties proceeded to arbitration. After a three-day hearing, the arbitrator issued an award (1) reinstating Bueno without back pay, benefits or accumulated seniority for "time away from work"; (2) deeming Bueno's time away as "a disciplinary suspension"; (3) conditioning Bueno's reinstatement on a "last chance" basis for a period of three years from the date of reinstatement, such that any violation of the City's use-of-force and reporting policies and/or truthfulness requirements will result in immediate discharge; and (4) allowing the City, at its discretion, to provide Bueno with "a reasonable amount and type of training in the appropriate use of force."

¶ 7        In the award, the arbitrator addressed each of the three identified use-of-force incidents. First, with respect to the August 2010 occurrence, the parties did not dispute that Bueno had been driving his squad car with another officer in the passenger seat and a handcuffed arrestee, who had been charged with aggravated battery, in the backseat. Bueno drove the car into a parking garage within close proximity to the police station. He then exited the vehicle, opened the backseat door, and punched the arrestee in the face. During an investigation interrogation in November 2011, Bueno explained that he punched the arrestee because he thought the prisoner was trying to defeat the handcuffs. According to Bueno, he wanted to distract the prisoner so that he could confirm that the handcuffs were still secure.

¶ 8        The arbitrator found that this explanation was "not remotely credible" and would "not be credited." In reaching this conclusion, the arbitrator emphasized that Bueno's explanation was undermined by both his failure to ask the other officer in his squad for assistance and the proximity of the police department to the parking garage, where officers could have assisted Bueno had he truly been concerned about the arrestee's handcuffs. The arbitrator concluded that Bueno "blatantly violated the Department's use of force policy" set forth in General Order 10.01 and further violated section 10.01.10's reporting requirements. In addition, the arbitrator found that Bueno had been untruthful when describing this incident during the November 2011 investigation interrogation, in violation of Department Rule 390.50. Under Rule 390.50, "Officers and employees are required to be truthful at all times, whether under oath or not." Specifically, the arbitrator assessed Bueno's explanation that he drove into the parking garage because it offered a "confined area" to check the arrestee's handcuffs, finding that claim was "absolute nonsense" and "[held] no water whatsoever."

¶ 9        Second, with respect to the January 2010 incident, Bueno did not deny punching the arrestee. He explained that it occurred while he was moving the arrestee from his cell into a holding cell. Allegedly, the arrestee became angry and aggressive and grabbed Bueno, which prompted Bueno to punch him in the face. The arbitrator ultimately concluded that the evidence did not support a finding that the use of force was "unjustified or excessive." Nevertheless, he determined that Bueno violated section 10.01.10 of General Order 10.01 by failing to report the incident.

¶ 10       Finally, with respect to the June 2009 incident, Bueno admitted that he pushed an arrestee after hearing that the latter had made vulgar comments about Bueno's daughter. The Union admitted that Bueno should not have pushed the arrestee, and the arbitrator found that Bueno's actions were "not necessary, not justified, and not intended to accomplish any police task." The

arbitrator therefore determined that Bueno's conduct during this incident violated the general orders because he used unnecessary force and also failed to report the incident.

¶ 11    Concluding that Bueno had engaged in misconduct, the arbitrator next assessed the Union's position that the City lacked just cause to discharge Bueno because either (1) he was subject to disparate treatment; (2) the City delayed action to discipline him: or (3) the Department condoned his conduct. The arbitrator ultimately agreed that Bueno's discharge was unjustified as a result of certain "due process considerations," namely, the City's delay in investigating the incidents and the Department's condonation of Bueno's conduct.

¶ 12    As to the City's delay in investigating the incidents, the arbitrator explained that it "may have resulted in the loss of pertinent video evidence of these incidents" that "might have been helpful to the Union's defense." Additionally, "witness memories may have faded during" the delay. As a result, the "delay may have prejudiced" the Union's defense, and the "City's discharge of the Grievant was procedurally flawed."

¶ 13    Regarding the Department's condonation of Bueno's conduct, the arbitrator found that members of the Department's command staff were aware of the use-of-force incidents yet did not initiate an investigation into his conduct. The command staff, he determined, "sen[t] a signal" that the conduct was acceptable. Because the Department essentially condoned Bueno's behavior, the arbitrator concluded that the City could not discharge him for just cause. Despite finding that the City could not discharge Bueno for his misconduct, the arbitrator nevertheless acknowledged that some discipline was warranted with respect to Bueno's unnecessary use of force, his failure to report the use of force, and his untruthfulness during the November 2011 investigation.

¶ 14    Based on these findings, the arbitrator determined that the appropriate remedy was to reinstate Bueno by June 3, 2013, as a full-time, paid police officer without back pay, benefits, or accumulated seniority for his time away from work; record his time away from work as a disciplinary suspension; and reinstate him on a "last chance" basis for a three-year period during which any "similar misconduct" by Bueno would entitle the City to immediately discharge him.

¶ 15    Instead of reinstating Bueno, the City filed its motion to vacate the arbitration award in the circuit court on June 12, 2013. The circuit court granted the City's motion to vacate on December 13, 2013, agreeing with the City that the award violated public policy:

> "In the instant case, the statutes and cases presented by the City clearly state a public policy against police officers assaulting prisoners and lying about matters related to the specific duties of the officer. The arbitrator *** found that the grievant engaged in this egregious conduct but made no finding *** that the grievant was likely not to do so again in the future. Thus, the Court finds that the [public policy] exception applies, and the arbitrator's order reinstating the grievant violated public policy."

In addition, the circuit court denied the Union's subsequent motion to remand the case to the arbitrator to make a factual finding concerning Bueno's likelihood to reoffend upon reinstatement. The Union timely appealed, and we have jurisdiction pursuant to Supreme Court Rule 303. Ill. S. Ct. R. 303 (eff. Jan. 1, 2015).

- 4 -

¶ 16 ANALYSIS

¶ 17 On appeal, the Union contends that the circuit court erred in vacating the arbitration award. The Union argues that the award of reinstatement did not violate public policy because there is no well-defined public policy that mandates termination of a police officer who engaged in misconduct involving unnecessary use of force, failure to report, or untruthfulness. Additionally, the Union maintains that public policy supports the award because the Department condoned the conduct, the City delayed its investigation of the incidents, and the City destroyed relevant video evidence that resulted in prejudice to Bueno's defense. In the alternative, the Union argues that the court erred in denying its motion to remand the cause to the arbitrator for additional findings concerning Bueno's likelihood to reengage in the misconduct upon his reinstatement as a police officer under the terms of the award.

¶ 18 A. Public Policy Exception

¶ 19 Judicial review of arbitration awards "is extremely limited." *American Federation of State County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (*AFSCME*). Where, as here, the arbitration involves a collective bargaining agreement, under the Uniform Arbitration Act (Act), a court will disturb an arbitration award only on the grounds which existed in common law "prior to the enactment of [the] Act" (710 ILCS 5/12(e) (West 2012)): specifically, "instances of fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration" (*AFSCME*, 173 Ill. 2d at 304). On review, we are "duty bound to enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement." *Id.* at 304-05. See *Village of Posen, Illinois v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 37 ("Whenever possible, arbitration awards should be construed to uphold their validity."). As our supreme court explained in *AFSCME*, "[c]ourts have crafted a public policy exception to vacate arbitral awards which otherwise derive their essence from a collective-bargaining agreement." *AFSCME*, 173 Ill. 2d at 306. Under this exception, reviewing courts "will not enforce a collective-bargaining agreement that is repugnant to established norms of public policy." *Id.* at 307. In order for the exception to apply, the public policy must be "well-defined and dominant." *Id.*

¶ 20 The public policy analysis involves two steps: We must first determine "whether a well-defined and dominant public policy can be identified"; and if so, we then assess "whether the arbitrator's award, as reflected in his interpretation of the agreement, violated the public policy." *Id.* at 307-08. This inquiry "is necessarily fact dependent" (*id.* at 311); however, the question of whether an award violates public policy is one of law, which we review *de novo*. See *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 27 ("Whether a provision in a contract, insurance policy, or other agreement is invalid because it violates public policy is a question of law, which we review *de novo*."). We acknowledge that the court in *AFSCME* does not explicitly set forth the standard for reviewing the circuit court's decision concerning the public policy exception. Its analysis, however, demonstrates a *de novo* review.

¶ 21 Our supreme court's opinion in *AFSCME* is instructive on the proper application of the two-prong analysis. There, the court reviewed an arbitration award reinstating a Department of Children and Family Services (DCFS) employee who had been discharged for falsifying progress reports and failing to prepare service plans for children. In considering the first prong,

- 5 -

the court found "a well-defined public policy in favor of truthful and accurate DCFS reporting." *AFSCME*, 173 Ill. 2d at 308. The court then proceeded to determine whether, under the second prong, the arbitrator's award, reinstating the employee, violated that public policy. Ultimately, the court answered that question in the affirmative. In its analysis, the court addressed the union's argument that the discharge violated the parties' collective bargaining agreement based on DCFS' failure to impose discipline in a timely matter. The court acknowledged that the identified public policy "conflicts with the policy inherent in providing for time limits within which disciplinary charges or claims may be brought." *Id.* at 317. But nevertheless, the court concluded that "the State's interest in its children's welfare and protection must override [the union's] concerns for timeliness." *Id.* Similarly, the court rejected the union's argument that the contractual time provision protected "industrial due process," concluding instead that such due process "merely requir[es] employers to give employees advance notice of and an opportunity to respond to the charges against them before discipline is imposed." *Id.* at 321. Finally, the court explained that "as long as the arbitrator makes a rational finding that the employee can be trusted to refrain from the offending conduct, the arbitrator may reinstate the employee to his or her former job, and we would be obliged to affirm the award." *Id.* at 322. But, addressing the facts before it in *AFSCME*, the court noted that if "an arbitrator awards full reinstatement as a remedy for the contractual violation without any findings that the worker poses no risk to the welfare and protection of DCFS's children and their families, the award simply cannot stand." *Id.* at 323. Rather, "the full measure of the arbitrator's discretion must always yield to public policy." *Id.*

¶ 22    Applying *AFSCME*, we must first determine if there is a well-established and dominant policy implicated by the arbitration award. Here, the parties offer conflicting descriptions of the public policies at stake. Relying on cases where police officers have been reinstated despite engaging in similar misconduct, the Union maintains that there is no public policy requiring the termination of all officers who misapply force or who have been found to be untruthful. In contrast, the City argues that there are well-defined public policies against police officers battering defenseless prisoners and lying under oath.

¶ 23    We find that the Union's position improperly conflates the two-prong test into a single inquiry. The issue is not whether the public policy itself requires that the employee be terminated. Rather, we first identify a public policy and then determine whether the arbitrator's award reinstating the employee, under the circumstances of the particular case, violates that identified public policy. Thus, decisions involving reinstatement of an employee who has engaged in similar misconduct is not dispositive for purposes of identifying whether the award implicates dominant and well-defined public policies. We find *AFSCME* to be instructive. There, the public policy at issue was not whether the reinstatement of DCFS employees guilty of misconduct was barred; instead, it was the "well-defined public policy in favor of truthful and accurate DCFS reporting." *Id.* at 308. The court then proceeded to address whether an award reinstating an employee violated this public policy.

¶ 24    When the issue is properly framed, we find that the arbitration award here implicates a well-defined and dominant public policy, namely, the public policy against police officers unnecessarily using force against prisoners and being dishonest about that use of force during a subsequent investigation. See *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)*, 197 Ill. App. 3d 503, 514 (1990) ("A clear public policy exists under the law not to batter prisoners."); *Valio v. Board of*

*Fire & Police Commissioners*, 311 Ill. App. 3d 321, 331 (2000) ("The failure of an officer to provide truthful statements during a department investigation could impair the department's ability to properly and fully investigate violations of departmental regulations," "impugn the integrity of the investigation and the department[,] and adversely affect the department's ability to provide efficient service to the community. A police department must be able to conduct accurate investigations of its officers engaged in questionable police conduct.").

¶ 25    Turning to the second prong, we next must consider whether the arbitrator's award, *i.e.*, reinstatement of Bueno as a police officer under the terms and conditions attached to his reinstatement, resulted in a violation of the established public policy of ensuring that law enforcement officers refrain from using unnecessary or unreasonable force, failing to report such incidents if they occur, and being untruthful during investigations of the incidents. The arbitrator found that Bueno unnecessarily used force against prisoners, failed to report the misconduct, and subsequently lied about his actions–conduct which contravenes public policies, poses physical danger to innocent third parties and exposes the City to liability. In *AFSCME*, our supreme court reiterated our obligation to ensure that an arbitration award does not threaten such dominant and well-defined public policies. *AFSCME*, 173 Ill. 2d at 333 ("[W]hen public policy is at issue, it is the court's responsibility to protect the public interest at stake."). What is not addressed in the award, however, is any finding by the arbitrator concerning the likelihood of recidivism, namely, whether Bueno is likely to engage in similar misconduct involving the use of force, reporting requirements or truthfulness following reinstatement as a police officer. Without such a finding, we do not have the necessary information to conclude that the arbitration award contravenes public policy. If the arbitrator had entered his award based on a "rational finding" that Bueno is unlikely to engage in the offending conduct upon reinstatement, the court "would be obliged to affirm the award." *AFSCME*, 173 Ill. 2d at 322. But here, as the Union concedes, the arbitrator never made an express finding on this point. Although authority supports the position that an implicit finding may suffice (see *id.* at 332), we find the award ambiguous on this point.

¶ 26    Specifically, in determining whether reinstatement was warranted notwithstanding Bueno's offenses, the arbitrator did not make any factual findings related to Bueno's likelihood to reoffend: his findings, for example, are silent on Bueno's employment history, character, disposition for violence, or rehabilitative potential. Instead, the arbitrator awarded Bueno's reinstatement not based on mitigating factors related to Bueno himself but rather on the City's delay in investigating the incidents and the Department's condonation of his conduct. From these findings, we cannot reasonably infer that the arbitrator made a rational finding that Bueno was unlikely to reoffend. Accordingly, the award is incomplete and the circumstances of our review warrant a remand to the arbitrator, for the limited purpose of clarifying the arbitrator's finding regarding the likelihood of recidivist behavior from Bueno.

¶ 27    The Union's cited authority is distinguishable. In *Department of Central Management Services v. American Federation of State, County & Municipal Employees, Council 31*, 401 Ill. App. 3d 1127 (2010), for example, the arbitrator discussed the employee's background and made findings concerning his ability to return to work. Specifically, the arbitrator found that the employee "had no prior history of abuse," his "performance evaluations indicated that he exceeded expectations with regard to human relations," and he "could capably return to work with nothing in the record to suggest that [he] would repeat the conduct." *Id.* at 1132.

¶ 28    Similarly, in *State v. AFSCME, Council 31*, 321 Ill. App. 3d 1038, 1039-40 (2001), the court acknowledged the arbitrator's findings that the employee had a "proven track record," "good evaluations," "no history of prior personnel problems," and "did not plan or provoke the fight." *Id.* at 1042. From these findings, the court concluded that "[i]mplicit in the decision is the arbitrator's *** thoughtful determination that [the employee] was amenable to rehabilitation and that the risk that he would engage in similar incidents in the future was low." *Id.* See also *Department of Central Management Services v. American Federation of State, County & Municipal Employees, Council 31*, 322 Ill. App. 3d 257, 260-61 (2001) (acknowledging that arbitrator "carefully considered" the employee's "rehabilitation potential and his amenability to discipline," based on his "disciplinary record and work history").

¶ 29    We note that the arbitrator did acknowledge, in the award, the Union's argument that "several factors present in this case mitigate against termination." Specifically, the arbitrator explained that the Union relied on the following factors in mitigation: Bueno's "long work history with the City"; his "highly commendable performance during his tenure as Des Plaines Police Officer"; and the "positive performance evaluations" that he received. Additionally, the arbitrator referred to the assertion that Bueno "has consistently demonstrated his ability to eliminate unsatisfactory behaviors when alerted to them" and that "[h]e has provided valuable services to the City and he will do so again if he is reinstated." These references to Bueno's performance at work and his responsiveness to notice of "unsatisfactory" conduct, however, are framed within the context of the Union's argument, not the arbitrator's rationale for reinstatement or the mandatory conditions for such reinstatement. We decline to conclude that the arbitrator's references to these "factors"–absent any express statement regarding their persuasive or dispositive value–necessarily result in an implicit finding that Bueno would not likely reoffend upon reinstatement. Therefore, we find the cases relied on by the Union unpersuasive on this point.

¶ 30                    B. Condonation of Conduct and Delay in Investigation

¶ 31    The Union, however, argues that we can nevertheless affirm the arbitrator's award based on the arbitrator's findings that the Department condoned his misconduct and that the City delayed in investigating the incidents. According to the Union, this state recognizes public policies against both prejudicial delays in investigating alleged employee misconduct and terminating an employee for behavior the employer condoned (*i.e.*, the "doctrine of condonation"). Either of these public policies, the Union maintains, allowed the arbitrator to reinstate Bueno. While we agree with the Union that, under certain circumstances, an employer's delay or condonation of conduct may limit or otherwise affect an employer's ability to terminate an employee, an assessment of the effect of such conduct by the employer must necessarily take into account the nature of the employee's conduct in the case and the future threat to the public policies at stake. See *AFSCME*, 173 Ill. 2d at 317 (explaining that "the nature of the [employee's] conduct at issue must be considered before arbitrary time restrictions can be imposed").

¶ 32    The Union's cited authority does not stand for the proposition that an employer's delay or condonation can overcome the public policy concerns of reinstating an employee who is likely to reengage in the offending conduct. See *Department of Central Management Services v. American Federation of State, County & Municipal Employees, Council 31*, 322 Ill. App. 3d 257, 260-61 (2001) (explaining that "arbitrator carefully considered [employee's]

rehabilitation potential and his amenability to discipline" and "concluded that there was no evidence that [employee] would not be amenable to progressive and corrective discipline if it were properly applied"); *Foster v. Springfield Clinic*, 88 Ill. App. 3d 459 (1980) (recognizing doctrine of "condonation" in suit by a doctor, who brought suit against her employer, for breach of her employment agreement after she was terminated due to her low productivity); *Bartels v. Denler*, 30 Ill. App. 3d 499, 502 (1975) (holding employee was entitled to incentive bonus based on the terms of his employment contract because the employer had "waived strict compliance" with the restrictive covenant provisions of the agreement by not terminating him despite knowing of his outside employment); *Mank v. Board of Fire & Police Commissioners*, 7 Ill. App. 3d 478 (1972) (holding that certain charges against a police officer were barred by laches, but not considering whether that officer's misconduct had public policy ramifications); *Schaffer v. Park City Bowl, Inc.*, 345 Ill. App. 279 (1951) (finding employer condoned misconduct by manager of roller-skating rink without addressing public policy implications of misconduct). Thus, these cases do not suggest that, in the absence of an explicit or implicit finding that an employee is unlikely to reoffend, we can uphold an arbitration award based solely on the employer's actions (*e.g.*, delay in investigating or condonation of conduct).

¶ 33                                    C. Destruction of Video Evidence

¶ 34        In the alternative, the Union asserts that we also can confirm the arbitrator's decision as a sanction for the City's alleged destruction of video evidence. The Union does not dispute that it never requested that the arbitrator sanction the City for the alleged destruction of evidence, and its brief fails to include any citations to the record supporting its allegations that the City destroyed evidence despite knowing of its existence and the need to preserve it. Accordingly, this argument is forfeited on appeal. *Board of Education of the City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 476 (1981) (finding claim not presented to arbitrator was waived on appeal); *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 115 (finding claim waived on appeal where party failed to "present a cohesive legal argument with citations to the pages of the record it relies upon"); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Argument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on.").

¶ 35                              D. Completeness of the Arbitration Award

¶ 36        As explained above, the award's absence of any findings, either explicit or implicit, concerning Bueno's likelihood to reoffend upon reinstatement prevents us from performing a comprehensive assessment of the public policies the award implicates. While we recognize that, in general, courts should uphold the validity of arbitration awards whenever possible (*Posen*, 2014 IL App (1st) 133329, ¶ 37), in this case, we are unwilling to assume, without any support in the award, that the arbitrator made a rational finding that Bueno was unlikely to reoffend upon reinstatement. Indeed, such an assumption would abdicate our responsibility to ensure that Bueno's continued employment is unlikely to pose a future threat to the important public policies at stake.

¶ 37        But we also remain cognizant of the significant public policies of this State favoring the resolution of disputes through binding arbitration and respecting the parties' contractual agreement to have the issues decided by an arbitrator. Thus, under the circumstances here, we agree with the Union and conclude that the proper course is to remand the action to the

arbitrator to clarify his award to include findings concerning Bueno's likelihood to engage in similar misconduct upon reinstatement. Illinois courts recognize that a remand to the arbitrator may be appropriate to allow the arbitrator to "correct a mistake which is apparent on the face of the award, complete an arbitration that is not complete, and clarify an ambiguity in the award." *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1111 (2001); *Chicago Teachers Union v. Illinois Educational Labor Relations Board*, 344 Ill. App. 3d 624, 632 (2003) ("Courts have *** historically exercised the power to remand a matter to an arbitrator in limited circumstances, such as where the award is obviously incomplete or ambiguous."); see also *Clanton v. Ray*, 2011 IL App (1st) 101894, ¶¶ 30-38 (holding circuit court did not err in remanding award to arbitrator for clarification because the award was ambiguous as to whether the arbitrator had imposed joint and several liability).

¶ 38    Federal court decisions, which can aid our interpretation of the Act (see *Federal Signal*, 318 Ill. App. 3d at 1111-12), similarly support a remand for clarification to protect the policies favoring arbitration of disputes. *M&C Corp. v. Erwin Behr GmbH & Co.*, 326 F.3d 772, 782 (6th Cir. 2003) ("[F]or a court to engage in guesswork as to the meaning and application of an ambiguous arbitration award is inconsistent not only with federal policy [favoring arbitration], but also with the parties' own agreement to submit their dispute to arbitration."); *Rich v. Spartis*, 516 F.3d 75, 83-84 (2d Cir. 2008) (holding remand to arbitration panel for clarification was necessary "[b]ecause the lack of clarity in the arbitration panel's award [did] not permit" the court to determine whether the award manifestly disregarded the law or exceeded the arbitrators' powers); *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1019 (7th Cir. 2000) ("[D]istrict courts are not to interpret ambiguous arbitration awards, but rather should remand such awards for clarification.").

¶ 39    Here, we find that the award is incomplete, or at least ambiguous, as it does not include any findings from which we can reasonably infer that the arbitrator found Bueno was unlikely to reengage in the offending conduct upon his reinstatement. Without such findings, we are unable to fully assess the public policy implications of Bueno's reemployment as a City police officer. Accordingly, we find that a remand to the circuit court to further remand the cause to the arbitrator with instructions to clarify the award is appropriate.

¶ 40    The City's arguments to the contrary are not persuasive. According to the City, the award is not incomplete—and, therefore, a remand is not necessary—because the arbitrator lacked the authority to address Bueno's amenability to rehabilitation. That issue, the City maintains, went "beyond the scope of the stipulated questions that were submitted to the Arbitrator." We disagree. *AFSCME* explicitly recognizes that arbitrators can, and indeed should, make such a determination. Moreover, the City's position directly contravenes its argument that, in the absence of such an express or implicit finding, we must vacate the award. Indeed, if we were to accept the City's contradictory positions, the arbitration award could never be confirmed: if the arbitrator declines to address the employee's likelihood to reoffend, the award violates public policy; if the arbitrator does address the issue, the arbitrator exceeded his authority.

¶ 41    Nor does the City's cited authority support a different result. None of those cases address whether a remand to the arbitrator for clarification was necessary for the reviewing court to perform a complete analysis of the award's public policy implications. See *Chicago Transit Authority v. Amalgamated Transit Union*, 399 Ill. App. 3d 689 (2010) (no discussion of remand); *County of De Witt v. American Federation of State, County & Municipal Employees, Council 31*, 298 Ill. App. 3d 634 (1998) (no discussion of remand); *Amalgamated Transit*

*Union v. Chicago Transit Authority*, 342 Ill. App. 3d 176 (2003) (no application of public policy exception).

¶ 42                                               CONCLUSION

¶ 43        For the above reasons, we reverse and remand to the circuit court with directions to remand the cause to the arbitrator, consistent with this opinion, for the limited purpose of issuing a finding, based on the record, as to whether Bueno is likely to engage in similar misconduct upon reinstatement.

¶ 44        Reversed and remanded.

¶ 45        JUSTICE PIERCE, dissenting.

¶ 46        The majority correctly recognizes that arbitration awards issued pursuant to a collective bargaining agreement are typically disturbed only on common law grounds that existed before the Uniform Arbitration Act (710 ILCS 5/12(e) (West 2012)). Those common law grounds are generally: fraud, corruption, partiality, mistake or failure to submit the question to arbitration. *AFSCME*, 173 Ill. 2d at 304. The majority also recognizes that, although we are "duty bound" to enforce and "uphold" the validity of arbitration awards, our supreme court has stated that a public policy exception exists that allows judicial vacation of arbitral awards that are repugnant to well-defined and dominant public policy. (Internal quotation marks omitted.) *Supra* ¶ 19.

¶ 47        In this collective bargai2ning agreement, the parties agreed that issues regarding police officer discipline would be submitted to an arbitrator to determine the appropriate disciplinary action and remedy to be imposed "and a court has no authority to disagree or to substitute its judgment" for that of the arbitrator. *State v. AFSCME, Council 31*, 321 Ill. App. 3d 1038, 1041-42 (2001) (*AFSCME II*). A reviewing court is therefore duty bound to follow the arbitrator's decision that draws its essence from a collective bargaining agreement, regardless of its view of the wrongfulness of the conduct at issue or the appropriateness of the punishment. *Board of Trustees of Community College District No. 508, County of Cook v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 421 (1979). It is clear that the arbitrator is not required to expressly state in the arbitral award that the employee is amenable to discipline. *AFSCME II*, 321 Ill. App. 3d at 1042-43.

¶ 48        Where an employee violates important public policy, as the arbitrator found in this matter, it does not necessarily follow that reinstatement cannot be ordered. *Department of Central Management Services v. American Federation of State, County & Municipal Employees, Council 31*, 401 Ill. App. 3d 1127, 1133 (2010). Where a violation of public policy is found and termination is not ordered, it is clear that the arbitrator is not required to expressly state in the arbitral award that the employee is amenable to discipline. *AFSCME II*, 321 Ill. App. 3d at 1043. Our supreme court has stated that " '[o]rdinarily, a court would be hard-pressed to find a public policy barring reinstatement in a case in which an arbitrator has, *expressly or by implication*, determined that the employee is subject to rehabilitation and therefore not likely to commit an act which violates public policy in the future.' " (Emphasis added.) *AFSCME*, 173 Ill. 2d at 332 (quoting *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1213 (9th Cir. 1989)).

¶ 49 I respectfully disagree with the majority decision to remand this matter to the arbitrator for findings regarding whether Officer Bueno is likely to reoffend. There is no requirement that an arbitrator use specific words or phrases in an order of reinstatement where there is a finding the employee has violated public policy. I would find that a commonsense reading of the detailed award clearly demonstrates the arbitrator implicitly found that Officer Bueno was amenable to rehabilitation and is unlikely to reoffend. The arbitrator noted Officer Bueno's otherwise favorable work history and the mitigating circumstances justifying reinstatement after imposition of substantial penalties. The award penalized the officer by treating his time off as an unpaid 14-month disciplinary suspension without benefits and without seniority accruals, the reinstatement was subject to a three-year "last chance agreement" under the collective bargaining agreement where any future misconduct would be a dischargeable offense and the arbitrator himself retained jurisdiction over the officer during the three-year period. Lastly, the arbitrator gave the City the option of providing additional use of force training to Officer Bueno which, in my view, is further support for the conclusion that there was an implicit finding of an unlikelihood of repeat conduct.

¶ 50 Simply stated, the arbitrator would not have conditioned reinstatement and given the City the option to provide additional training if he found, explicitly or implicitly, a likely risk of further misconduct. We have previously found that "[i]f it is clear from the award that the arbitrator made a rational finding that an employee could capably return to and perform his duties without impinging or undermining the public policy and without posing a risk to public safety and welfare and that the employee will refrain from the misconduct, the court is obligated to affirm the award." *AFSCME II*, 321 Ill. App. 3d at 1043. In my view, the remedy in this award demonstrates an implicit finding by the arbitrator that Officer Bueno can capably return to and perform his duties without undermining public policy or posing a risk to public safety or welfare.

¶ 51 I have little doubt that, on remand, the arbitrator will find that officer Bueno is unlikely to re-offend, the City will again seek vacation of the award by requesting the court to substitute its judgment for that of the arbitrator which, again, a court cannot do. I would affirm this arbitral award, not because we agree with the decision, but because we are bound to follow established law regarding the deference given to arbitration awards based on a collective bargaining agreement. I respectfully dissent.